## HUMES v. CITY OF FT. SMITH, ARK.

(Circuit Court, W. D. Arkansas, Ft. Smith Division. May 2, 1899.)

1. JURISDICTION OF FEDERAL COURTS—AMOUNT IN CONTROVERSY — INJUNCTION SUITS.

The amount involved in a suit for an injunction, for the purpose of determining the jurisdiction of a federal court, is the value of the right to be protected, or the extent of the injury to be prevented, by the injunction.

2. POLICE POWERS OF STATES—LICENSING PRIVILEGES OR OCCUPATIONS.

Whenever a calling or business is of such a nature that it may fairly be deemed against public policy, or detrimental to the public welfare, and might be prohibited entirely, a state legislature may provide that it shall be licensed, and its action in that regard is not an exercise of the power of taxation, but of its police powers, and is not subject to judicial control.

3. SAME—GIFT ENTERPRISES—DEALERS IN TRADING STAMPS.

The legislature of Arkansas passed an act authorizing cities of the first and second class to license, tax, and regulate gift enterprises by imposing a license tax on any person, firm, or corporation engaged in such enterprises not exceeding $1,000 per year, and on any person, firm, or corporation aiding or patronizing the same not exceeding $500 per year. It defined gift enterprises as including the premium stamp, periodical ticket, trading stamp, and similar schemes and devices by means of which certain merchants, manufacturers, and other persons engaged in lawful callings are advertised, exploited, and patronized to the exclusion of others on like terms. A city of the first class passed an ordinance in conformity to such statute, containing the same definitions, and imposing monthly licenses on all persons or concerns engaged in gift enterprises or patronizing the same, within the limits fixed by the statute. *Held*, that the act and ordinance were valid, and not in violation of a provision of the state constitution requiring equality of taxation, or of the fourteenth amendment to the federal constitution, as applied to the business of a dealer in trading stamps, which he sold to certain merchants of the city only, to be given by them to their customers with their purchases, and which were redeemed by the seller in "presents" on their being presented by the customers in certain numbers.

In Equity.

On the 24th of March, 1899, the complainant, John C. Humes, filed his bill in equity in this court, alleging that he is a citizen of the state of Missouri, and that the defendant is a municipal corporation existing under the laws of Arkansas. He also alleges that he is engaged in business within the corporate limits of said city, under the style of the Co-operative Premium Association; that in conducting his business he solicits merchants of the city to patronize him, and that to such as agree to do so he issues stamps, for which they pay; that he issues a great number of copies of a little book in which these stamps can be pasted, and which also contains a directory, giving the names, addresses, and occupations of all the merchants so agreeing to patronize him; that he sends out a large number of canvassers, who place copies of the book in every household in the city, and explain to every one the advantages of patronizing the merchants holding the stamps; that when a person purchases goods from a merchant who does business with complainant, and pays cash for the amount of his purchase, or pays his bill therefor promptly on first presentation at the end of the month, he is entitled to demand and receive stamps issued by complainant in exact proportion to the amount of his purchase; that he has a store in said city, in which he keeps a stock worth several thousands of dollars, embracing a vast assortment of useful and ornamental articles for the home, varying in cost from some trifles to things of considerable expense; and the persons receiving these stamps can, whenever they desire, present them at complainant's store, and receive in exchange therefor any article they may select of the value of the stamps surrendered. The complainant attaches to his bill a copy of the book above re-

ferred to, which he makes an exhibit, and which will be referred to hereafter. He alleges that the tendency of his business is to encourage thrift and prompt payment of debts, and that it is beneficial alike to the public and the merchants who use the system, it enabling the former to get more for the money, while it advertises the latter, increases their custom and their cash sales, and aids them in the collection of their debts. He alleges that the defendant, urged thereto by sundry merchants who have conspired to break up his business, passed the following ordinance:

"Ordinance No. 496.

"An ordinance defining gift enterprises, and fixing a license and tax thereon.

"Be it ordained by the city council of Fort Smith:

"Section 1. That it shall be unlawful hereafter for any person, firm or corporation to engage in, aid, abet or patronize any gift enterprise as hereinafter defined without having first obtained and paid for a city license therefor from the proper city authorities, as provided in section 2 of this ordinance.

"Sec. 2. That every person, firm or corporation who shall engage in or pursue the avocation, business or enterprise of selling or giving away premium stamps, periodical tickets, trading stamps, or checks or other devices to merchants, manufacturers or other persons engaged in mercantile business, shall pay to the city of Fort Smith a license of seventy-five dollars a month, in advance on the first day of each and every month, and license taken out at any time during a month shall be for the sum of a full month's license, and expire on the first day of the succeeding month.

"Sec. 3. Every person, firm or corporation who shall offer premium stamps, periodical tickets, trading stamps, or similar schemes and devices for the purpose of inducing trade within the city of Fort Smith, shall pay a license to the city of Fort Smith of forty dollars per month, to be paid in advance on the first day of each and every month while so engaged in said business, and said license taken out at any time during a month shall be for the sum of a full month's license, and expire on the first day of the succeeding month.

"Sec. 4. Any person, firm or corporation who shall violate any of the provisions of this ordinance shall be fined in any sum not less than ten dollars nor more than twenty-five dollars, and each day that any person, firm or corporation shall be engaged in business in violation of this ordinance shall be deemed and considered a separate offence.

"Sec. 5. The term 'gift enterprise' as herein employed shall include the premium stamp, periodical ticket, trading stamp, and similar schemes and devices wherein by means of stamps, checks, tickets or other devices certain merchants, manufacturers and other persons engaged in lawful occupations or callings are advertised, exploited and patronized to the exclusion of others on like terms.

"Sec. 6. All ordinances or parts of ordinances in conflict with this ordinance are hereby repealed, and this ordinance shall be in full force and effect from and after its passage and publication.

"Passed and approved March 20, 1899.

"[Signed]                                      Tom Ben Garrett, Mayor.

"Attest: D. B. Sparks, City Clerk."

The complainant also alleges that the license is vastly in excess of the possible expense of regulating his business, and that it is many times larger than the license fee imposed on any other legitimate business conducted in said city; that the object of fixing the license at so high a rate was to destroy his business, and that, if the ordinance is enforced, that result will follow. He also alleges that the 38 merchants who have adopted his scheme will be liable to prosecution in civil actions, as well as all the numerous agents and canvassers employed by him, and a multiplicity of litigation will result, unless the ordinance is enjoined; that the contracts of the complainant with said merchants require them to use the stamps for the term of a year, and, if said merchants are prevented from using the same, it will bring about a multiplicity of suits between them and the complainant; and that, unless the defendant is restrained, it will use said ordinance as a means of destroying his business, harassing and oppressing himself and customers by civil suits

and by prosecution. He then alleges that the city is insolvent, and that, if he should pay the license, he could not recover it at law; that it would require many years to determine the validity of said ordinance in the courts, and all license fees paid by him and his customers in the meantime would be lost; that the defendant city consumes in its running expenses all the money that it can raise under the constitutional limit of taxation, so that there would be no way of enforcing the collection of any judgment which the complainant might recover against it for license fees paid. Upon these facts he prays for an injunction restraining the enforcement of the ordinance.

When the bill was filed, by consent of parties a temporary restraining order was issued. On the 31st of March the defendant city filed its answer, in which it states: That it is a municipal corporation, and a city of the first class, organized and existing under the laws of the state of Arkansas, and within the jurisdiction and limits of this court. Denies that the complainant has a store within said city in which he keeps a stock of goods worth several thousand dollars, embracing the articles mentioned in the bill, and alleges that said stock is of slight value, and consists of cheap and invaluable articles. Denies that the business conducted by complainant encourages thrift, or the prompt payments of debt, and alleges that said business is beneficial to no one except the complainant, and alleges that the said business adds to the expenses of the public generally to the extent of the cost of the stamps sold, and for which there is no corresponding benefit; that its tendency is to divert from the regular channel of business all cash trade to those who patronize the complainant, which is an interference with the regular and legitimate course of trade, and tending to cause a great loss to all those merchants who are not allowed to patronize the complainant. It alleges that complainant will only sell and furnish stamps to certain merchants and persons in each line and branch of trade, and not to all merchants. It denies that the ordinance was passed because it was urged thereto by sundry merchants who refused to patronize the complainant. Denies that the ordinance was passed to render the complainant's business impossible, or that the license imposed by the ordinance was intentionally fixed at so high a rate that it cannot be paid out of the profits of the business, or that it was the object of said ordinance to destroy the petitioner's business. It denies the complainant will be damaged by reason of said ordinance in the sum of $2,000. It denies its insolvency. Denies the amount in controversy in this action exceeds the sum of $2,000. It alleges that the amount in controversy is far less than $2,000, and alleges that the complainant is amply protected at law; and also denies the jurisdiction of the court. Further answering, it alleges that the ordinance set out in the complainant's bill was passed, and approved by the mayor of the defendant city, and became a law, on the 20th day of March, 1899; that the defendant city is a city of the first class, and that the ordinance was passed under and by virtue of the express authority invested in all cities of the first and second class by the state of Arkansas by an act of the state legislature passed and approved, and in full force and effect from and after the ——— day of ———, 1899, and sets forth the act, which is in words and figures as follows, to wit:

"An act defining gift enterprises and authorizing cities of the first and second class to license, tax and regulate the same.

"Be it enacted by the general assembly of the state of Arkansas:

"Section 1. All cities of the first and second class are hereby authorized and empowered to license, tax and regulate gift enterprises, and all persons, firms and corporations aiding, abetting or patronizing the same: provided that such license or tax shall not exceed one thousand dollars per annum for each gift enterprise, and five hundred dollars per annum for each person, firm or corporation aiding, abetting or patronizing such gift enterprise.

"Sec. 2. The term 'gift enterprise' as herein employed shall include the premium stamp, periodical ticket, trading stamp and similar schemes and devices, wherein by means of stamps, checks, tickets or other device, certain merchants, manufacturers and other persons engaged in lawful occupations or callings are advertised, exploited and patronized to the exclusion of others on like terms."

The answer then alleges that said act of the legislature was authorized by the constitution of the state, which has the power to lay and levy all taxes, and that the constitution authorized the legislature to delegate the power to pass such ordinance to. municipal corporations. It also alleges that the ordinance was passed for the purpose of regulating, licensing, and taxing the privilege of the complainant and others engaged in the business of gift enterprises, and all other businesses of like kind and class. It also alleges that the object and purpose of the bill is to prevent criminal prosecutions, and that this court has no jurisdiction to grant an injunction for such purpose.

At the same time the answer was filed, the defendant filed a motion to dissolve the injunction for the following reasons: (1) That the court is without jurisdiction of the subject-matter herein. (2) That the bill filed herein does not state facts sufficient to entitle petitioner to the relief sought. (3) That the bill seeks to enjoin the prosecution of criminal proceedings. (4) That the bill does not show cause for equitable relief, but shows upon its face that there is adequate remedy at law. The motion was argued and submitted on the bill and answer, and afterwards, by consent, a replication and an agreed statement of facts were filed, and the cause submitted to the court on briefs for final hearing.

The facts, so far as they are important to the decision of this case, are as follows:

The complainant is a citizen of Missouri, and engaged in the premium stamp business in the city of Ft. Smith prior to the passage of the act of the legislature and the ordinance of the defendant city, both of which are hereinbefore correctly set forth. Complainant keeps on display in a storehouse on the principal street in the city a stock of articles for the home, both useful and ornamental, which said articles are not kept for sale, but for the purposes hereinafter stated. The complainant's business consists in this: He manufactures a large number of little books, in which, among other things, are contained 20 pages, on each page of which are contained 24 stars, far enough apart so that a stamp, which the complainant manufactures, and about the size of a postage stamp, and made much in the same way, may be pasted on each star. He selects one or more merchants in each line of business in the city, and enters into a contract with them to use his system of business. Having procured such merchants to enter into contract with him, their names and the number of their business houses, and the lines of business in which they are engaged, are printed in this little book. He then sends out canvassers to distribute these books, to explain them, and to induce persons with whom the books are left to do business with the merchants who have agreed with him to adopt his system of business. The merchants who enter into this contract purchase from him stamps. These stamps are sold at from $3 to $5 per 100. The merchants who buy the stamps give to each of their customers a stamp for each 10 cents worth of goods that he purchases; that is to say, if the customer buys 30 cents worth of goods, he gets three stamps; if he buys 85 cents worth of goods he gets eight stamps; if he buys $10 worth of goods he gets 100 stamps. When a purchaser has received stamps sufficient in number to cover 10, 20, or 30 pages of the book, he may take the book to the place of business of the complainant, and there receive a present of his own selection from the stock which he keeps on hand. No person can purchase these stamps except persons who do business with the plaintiff. If the customer pays cash for his goods, or pays his bill promptly at the end of the month, he has the right to demand of the merchant the stamps in question; but if he does not pay promptly at the end of the month, and the merchant chooses, he can give him the stamps anyway. The stamps have the same purchasing power in the hands of any holder, and are given indiscriminately to all customers patronizing the merchants having contracts with the complainant. The complainant keeps his store open at all ordinary business hours, and the customer can select any article in the store within the price of the stamps which he holds. The complainant, in making contracts with his customers, restricts himself to the number of persons in each line of business with whom he will do business. Complainant will not redeem his stamps unless they amount to as much as 48 in number, which represents a purchase of $4.80 worth of goods. In addition to redeeming stamps by giving to persons hold-

ing the same such articles as they have stamps to pay for, the complainant presents any article from his store, marked for sale at 90 pages of stamps, to that person who at the end of each month presents the largest number of stamps, and these gifts are outside of the regular purchasing value, of the stamps.

Printed upon the little book which he distributes is the following: "Citizens' Stamp Book. Issued Free by the Co-operative Premium Association, for the purpose of making valuable presents to all those who give any or all of the within-named merchants the benefit of their trade. For further information as to its use, see within. Remember the premiums cost you absolutely nothing." Immediately following is this explanation: "We, the firms whose names appear in the directory of this book, representing every line of retail trade in the city, respectfully announce to the public that we will give the premium stamps issued by the Co-operative Premium Association free to every person purchasing goods from us, one premium stamp for each and every ten cents spent with us, provided our customers ask for them. The stamps to be given only to customers paying cash, or those who pay their bills in full at least once every thirty days, and only to be given at the time of paying bills. Thus, if your purchase amounts to 30 cents, you will receive 3 stamps; 85 cents, 8 stamps; $10.00, 100 stamps, etc. * * * When the book is filled, take it to the office of our headquarters, at the address below, and you will receive any of the premiums you wish to select from our catalogue, listed under Class A, absolutely free of charge. * * * Remember it is not necessary to fill this book with premium stamps before securing a premium, unless you prefer to do so, as we have premiums for each 10, 20, and 30 pages. See list of premiums, or call at our office and examine them." Then follows this: "Directory of Merchants who give premium stamps. Our object in making this proposition to the public is: First, the object of all judicious advertisers,—to gain new patronage by giving the money spent in advertising directly to the public in presents; and, second, to stimulate the prompt payment of bills, as every one must realize that we can sell goods cheaper and give better service, if we receive our money promptly, than we can if we are compelled to carry long accounts. It is therefore with pleasure that we each contribute our share toward making our customers beautiful and valuable presents, as a token of our appreciation of their patronage. Careful inspection of the names of the firm members of this association is respectfully invited, that the public will at once see that they are among the best and most reliable in the city, as only those who are known to keep good goods, and who sell at reasonable prices, were asked to join our association." Then follows a directory of firms doing business with the complainant. At the end of the book is the following: "Special Notice. This book is presented to ——, with our compliments, for the purpose of being filled with our premium stamps, which will entitle the bearer to one of our handsome and valuable presents. If, for any reason whatever, the book is not used for this purpose, the holder will confer a special favor to keep it until called for by our representative. Please bear in mind that only the merchants named in this book can supply you with our premium stamps, and that they cost you absolutely nothing, as they are given free with every dime you spend for living necessities."

The contract between complainant and his customers is as follows, blanks being left for the name of the customer:

"Memorandum of Agreement.

"Fort Smith, Ark., ——, 1898.

"This agreement by and between J. C. Humes, General Manager of the Co-operative Premium Association, party of the first part, and —— of Fort Smith, Ark., party of the second part, witnesseth, that the said party of the first part, for the consideration hereinafter mentioned, agrees with the party of the second part to perform in a faithful manner the following: To print in the directory of his Citizens' Stamp Books the name, business, and address of the party of the second part: to deliver at the homes of the people of Fort Smith, Ark., and vicinity, 4,000 copies of said stamp books, and to instruct

and explain to them how they are to use the same, and to keep a correct list of the names and addresses of all persons to whom the same are delivered; to visit every home, in the city, through solicitors, at least once every ninety days, in the interest of the association, and in every way to use his best endeavor to promote the business interest and trade of the party of the second part. And the party of the second part agrees with the party of the first part, in consideration of the faithful performance of the foregoing, to receive from the party of the first part a sufficient amount of premium stamps to supply all persons who may call for them; the stamps to be given out as follows: One premium stamp for each and every ten cents represented in a purchase; ten stamps for one dollar, etc.; the stamps to be given when the purchases are paid for, provided bills do not run over thirty days, in which case the party of the second part can, at his option, refuse to give stamps; to pay the party of the first part (or his agent) fifty cents per hundred for all stamps thus used; to make weekly settlements for all stamps used or given out; to encourage the use of the stamp books and the collection of stamps by all buyers, and to co-operate in every way possible with the party of the first part to promote the best interests of all the merchants named in the books. The parties of the first and second part mutually agree that this contract shall remain in force for one year from date. No stipulation not appearing on this agreement will be recognized by either party."

The profits of complainant's business per annum amount to —— dollars. The defendant city taxes a great many occupations and privileges, but none of them to the extent that it does the complainant's business. The complainant's customers or patrons are not prohibited by their contract, or prevented in any way by the complainant, in giving out the stamps as they see fit, without regard to whether the purchaser pays cash, pays his bill at first presentation at the end of the month, or pays months after the bill is due. The license tax imposed by the ordinance of the defendant city is $75 a month, payable monthly. The defendant is a city of the first class, organized under the laws of the state of Arkansas.

George B. Rose, for complainant.
William B. Cravens, for defendant.

ROGERS, District Judge (after stating the facts as above). In the view which the court takes of this case, it is not important to determine all the questions discussed by counsel. The defendant insists that the court is without jurisdiction, because the amount in controversy does not exceed the sum of $2,000; that is to say, that the amount which the complainant would have to pay for license to conduct his business does not amount to that sum. Jurisdiction is not determined in that way. Jurisdiction is determined by the value of the right to be protected, or the extent of the injury to be prevented, by the injunction. Railway Co. v. McConnell, 82 Fed. 65. Nor does the court think that the purpose and object of the injunction is to prevent criminal prosecutions. The bill was filed before any criminal prosecutions were instituted, and the object and purpose of the bill is to declare void the ordinance of the defendant city, and thereby prevent the destruction of, or at least great injury to, this business.

The complainant insists that the ordinance is in violation of section 5, art. 16, of the constitution of Arkansas, which is as follows:

"Sec. 5. All property subject to taxation shall be taxed according to its value, that value to be ascertained in such manner as the general assembly shall direct, making the same equal and uniform throughout the state. No one species of property from which a tax may be collected shall be taxed high-

er than any other species of property' of an equal value, provided the general assembly shall have power, from time to time, to tax hawkers, peddlers, ferries, exhibitions and privileges in such manner as may be deemed proper."

A proviso follows in this section, which it is unimportant to set out. The complainant also insists that the ordinance is in violation of the fourteenth amendment to the constitution of the United States. The view I am constrained to take of the facts renders it unnecessary to enter upon any dissertation upon the police power of the state, or upon constitutional law, or to review the numerous authorities cited relating to these subjects. In City of Little Rock v. Barton, 33 Ark. 443, which was a proceeding against a broker, that court say:

"The authority of the legislature to regulate the exercise of the privileges or the following of pursuits or occupations, does not fall properly within its taxing power, but within its police power. Pursuits which are detrimental may be prohibited altogether, or licensed for a compensation to the public. So persons desiring to exercise privileges and engage in callings really useful to society may be required to obtain licenses, and pay a reasonable compensation therefor."

Mr. Justice Bradley, in Live-Stock Dealers' & Butchers' Ass'n v. Crescent City Live-Stock Landing Slaughter-House Co., 1 Abb. (U. S.) 398, Fed. Cas. No. 8,408, said:

"We may safely say that it is one of the privileges of every American citizen to adopt and follow such lawful industrial pursuits, not injurious to the community, as he may see fit, without unreasonable regulation or molestation."

It would thus appear that the supreme court of the United States excepts from the operation of the fourteenth amendment pursuits "injurious to the community." It recognizes the principle that such occupations or pursuits as fall within the police powers of the states are not affected by the fourteenth amendment. Mugler v. Kansas, 123 U. S. 623, 8 Sup. Ct. 273. Manifestly, the legislature of the state regarded this gift enterprise business as detrimental to the community. I do myself. I do not regard it as a legitimate business. The legislature might have prohibited it altogether, in the exercise of its police power; but it chose to license it, and make it a source of revenue to the city, as it does some other deleterious occupations, with which, in my opinion, the gift enterprise business should be classed. If right in this, the act of the city council, being clearly within the act of the legislature, is valid and binding, and neither the one nor the other infringes, I think, the provisions of the fourteenth amendment to the constitution of the United States.

In Louisville & N. R. Co. v. Kentucky, 161 U. S. 677, 700, 16 Sup. Ct. 714, 723 (which is a case the facts of which are entirely different from the ones in the case at bar), the supreme court of the United States said:

"These cases [referring to various cases referred to in the opinion], however, do not infringe upon the general principles, so frequently declared, that, where the police power is invoked in good faith for the prohibition of a practice which the legislature has declared to be detrimental to the public interests, it will be sustained, wherever it can be done without the impairment of vested rights. Notwithstanding these cases, the general rule holds good that whatever is contrary to public policy or inimical to the public interests is subject to the police power of the state, and within legislative control; and in the exercise of such power the legislature is vested with a large discretion, which,

if exercised bona fide for the protection of the public, is beyond the reach of judicial inquiry."

Illustrations of the exercise of this power are found in the cases cited in Crutcher v. Kentucky, 141 U. S. 61, 11 Sup. Ct. 851, and in the cases cited in Louisville & N. R. Co. v. Kentucky, supra. I am content, however, to rest my decision upon the reasoning and conclusions of the court in the case of Lansburgh v. District of Columbia, decided by the court of appeals of the District of Columbia and reported in 56 Alb. Law J. 493. While the details of that case are different from the details in this, the substantial facts are the same. That court, in summing up the facts, stated this:

"In like manner, we think the case may be decided without reference to the numerous decisions cited by counsel for the District, in each of which the element of chance in the distribution of gifts and prizes was the controlling fact. Without the necessity of declaring that the acts proved in this case constitute the conduct of a lottery or gift enterprise, as those words are commonly understood, or even of finding that the element of chance operates intentionally and distinctively in the scheme of the trading stamp company, we think, nevertheless, that they come within the prohibition of the statute, which, as before said, furnishes its own definition of 'gift enterprise.' Although one of the most shrewdly planned of the many devices to obtain something for nothing, and one apparently entirely novel, it could hardly have come more clearly within the scope of the statute had it been well known, and expressly in the contemplation of congress, at the time of the enactment. The Washington Trading Stamp Company and its agents are not merchants engaged in business as that term is commonly understood. They are not dealers in ordinary merchandise, engaged in a legitimate attempt to obtain purchasers for their goods by offering fair and lawful inducements to trade. Their business is the exploitation of nothing more or less than a cunning device. With no stock in trade but that device, and the necessary books and stamps, and so-called 'premiums' with which to operate it successfully, they have intervened in the legitimate business carried on in the District of Columbia, between seller and buyer, not for the advantage of either, but to prey upon both. They sell nothing to the person to whom they furnish the premiums. They pretend simply to act for his benefit and advantage by forcing their stamps upon a perhaps unwilling merchant, who pays them in cash at the rate of $5 a thousand. The merchant who yields to their persuasion does so partly in the hope of obtaining the customers of another, and partly through fear of losing his own if he declines. Again, a limited number only (an apparently necessary feature of the scheme) are included in the list for the distribution of the stamps, and other merchants and dealers who cannot enter must run the risk of losing their trade, or else devise some other scheme to counteract the adverse agency. The stamps are sold at the rate of fifty cents per hundred to the contracting merchants, and yet purport to be redeemable with premium gifts at the assumed value of one dollar per hundred. Unless, therefore, the so-called 'premiums' to be distributed among the diligent collectors of the stamps are grossly overvalued, the scheme cannot maintain itself, for, in addition to the actual cost of the premiums, it has to bear the cost of the books and stamps, and the maintenance of its office and exhibition room. If the premiums should have any fair value, then the stamp company must inevitably rely upon the failure of the presentation of tickets for redemption by reason of its requirement that not less than 990 tickets—representing cash purchases of $99.90—shall be pasted in a book, and produced at one time, to entitle the holder to his premium. In this event the company, if it actually contemplates making good its contracts, is relying upon a lottery; that is to say, the chances and advantages of its game for its expectations of profit or gain. There is not a shadow of rational foundation for the stamp company's claim that it confers a benefit upon buyers by procuring for them an actual discount. If its business were continued, and its contracts faithfully performed, its inevitable result would be, as in all unnecessary interventions of third persons or 'middle men'

between producer and consumer, an increase of cost to the latter. The prohibition of such a scheme is clearly within the power of congress, within this District, and the statute under which the prosecution has been maintained makes ample provision for its exercise."

I am unable to improve upon this statement as to nature and character of the complainant's business. It is insisted by counsel that the power of congress in the District of Columbia is not restrained by the fourteenth amendment. That contention is disposed of by what has already preceded. But the court of appeals of the District of Columbia, in the Lansburgh Case, 56 Alb. Law J. 490, said:

"It is not denied that the power of congress to legislate in respect of matters affecting the public health, safety, peace, and morals within the District of Columbia is the same as that of the state legislatures within their several jurisdictions. It is neither greater nor less; for 'all of the guaranties of the constitution respecting life, liberty, and property are equally for the benefit of all citizens of the United States residing permanently or temporarily in the District of Columbia as of those residing in the several states of the Union,'"—citing U. S. v. Ross, 5 App. D. C. 241, 247, 248, 23 Wash. Law Rep. 86; Callan v. Wilson, 127 U. S. 540, 8 Sup. Ct. 1301.

I conclude that wherever the thing sought to be regulated is of such a nature as that the legislature might prohibit it outright, because detrimental to the public interests, or against the public health or public morals, the manner of dealing with it is a matter solely addressed to the legislature, and is beyond judicial inquiry. The temporary restraining order is dissolved, and the bill dismissed, with costs.