## JOHNSON v. MAYOR AND COUNCIL OF MACON.

1. A municipal tax ordinance for a particular year, which is plainly and unequivocally broad enough in its terms to cover given occupations, is not rendered inoperative as to persons carrying on the same because the legislative municipal body, whether composed of the same or different members, adopted an amendment to the ordinance so as to expressly include such occupations by name. This latter action would not bind the courts to hold that the original ordinance was not intended to apply to these occupations.

2. Under the charter of the City of Macon its municipal authorities have the power to impose a license tax on all vehicles used for business purposes, whether such vehicles are used by common carriers in transporting freight or passengers for pay, or are simply used by merchants for the purpose of delivering goods to their customers.

3. While the municipal authorities of the City of Macon can not enforce the collection of a license tax by imprisonment, nor punish a person for his mere failure to pay the same, they have the power to pass and enforce an ordinance making it an offense to do business in the city without procuring the license or licenses required by a valid municipal ordinance.

Argued November 18, — Decided December 19, 1901.

Certiorari. Before Judge Felton. Bibb superior court. August 5, 1901.

*Guerry & Hall,* for plaintiff in error.
*Minter Wimberly,* contra.

Fish, J. Johnson, the plaintiff in error, was tried in the recorder's court of the City of Macon for a violation of license ordinances of that city, and was convicted. He carried the case by certiorari to the superior court, where the certiorari was overruled; whereupon he excepted and brought the case to this court. It appears from the record that Johnson, on the first day of January, 1901, and at the time he was tried, was engaged, in the City of Macon, in carrying on the business of a coal-merchant; that in this business he used two two-horse wagons and one one-horse wagon for the purpose of delivering coal to his customers, and that these wagons were not used for any other purpose; that he charged his customers fifty cents per ton extra for coal where he delivered it, but as an item of expense in his business he estimated that it cost him one dollar per ton to deliver coal, and that he, therefore, derived no income whatever from the use of these wagons, save only as their use may have tended to increase his sales. He had paid to the city thirty-five dollars as "an annual business or privilege

tax for carrying on his business as a coal merchant" during the year 1901.  He paid an ad valorem tax of one and one quarter per cent. upon the amount of capital invested in this business.  On the 1st of January, 1901, and on the 15th of that month, the date when he paid the license for carrying on the business of a coal-merchant, the section of the general license ordinance imposing a license tax upon persons using delivery-wagons was as follows :  " Delivery Wagon.  Each and every wagon or other vehicle used by butchers, bakers, brewers, beer dealers, ice dealers, manufacturers of soda water, etc., undertakers, or used for delivering oil or any other articles or packages, or. for delivering goods sold by grocers and other merchants, excepting only milk wagons or wagons from farms, one-horse, $15.00.   Delivery wagon or dray, two-horse, $30.00."  ` On January 15, 1901, this portion of the ordinance was amended by inserting the words, " persons selling wood or coal," after the word "butchers."   The city authorities required Johnson to pay $30.00 on each of the two-horse· wagons and $15.00 on the one-horse wagon which he used in his business.   He failed to do this, and the prosecution which resulted in his conviction followed.   The penal portion of the general license ordinance upon which the prosecution was based was as follows: ".All persons entitled to have license issued to them under the ordinance, and who do not pay the same by January 15, 1901, or within fifteen days from commencing business (itinerants excepted, license for which being due. on commencing business), shall be summoned before the recorder's court, and, upon conviction, shall be punished as prescribed in the act creating said recorder's court."

1. The first ground of alleged error in the petition for certiorari is, that " there was no ordinance in existence which authorized the collection of said tax or the requirement that your petitioner pay said license on his said wagons."   In support of this ground, counsel for plaintiff in error argue that, as the ordinance before it was amended " did not include by name persons selling wood or coal," and " the same body, composed of the same men," passed this original ordinance and also the amendment thereto, their client, who procured his license to carry on the business of a coal-merchant before the ordinance was amended, was not liable for the license tax imposed upon delivery-wagons.   Counsel say : " The same body which enacted the law construed it, and it seems that its construc-

tion should be final.    It is an admission that the original ordinance passed was not intended by its terms to include persons selling wood and coal, and that an amendment to this effect was necessary so as to include these people."    We do not think that this contention is sound.    The original ordinance was plainly and unequivocally broad enough in its terms to include persons selling wood or coal.    It included " Every wagon or other vehicle  .   . used for delivering oil or any other articles or packages, or for delivering goods sold by grocers and other merchants, excepting only milk wagons or wagons from farms."    This is very broad and sweeping language; and it seems to us too clear for argument that the delivery-wagons used in his business by a coal-merchant are covered by it.    Such a merchant is included in the unqualified expression, " other merchants," and the goods in which he deals are included under the expression, " any other articles or packages," and the only delivery-wagons used for business purposes excepted from the operation of the ordinance are milk-wagons and wagons from farms.    No amendment to the original ordinance could make any plainer the inclusion within its terms of delivery-wagons used by a coal-merchant in carrying on his business.    There was, therefore, neither need nor room for subsequent legislative construction of the meaning of the ordinance in this particular.    We do not, however, think that the passage of the amendatory ordinance is to be taken as a legislative construction that delivery-wagons used by merchants dealing in wood or coal were not included within the scope of the original ordinance.    It is just as likely that the insertion of the words, "persons selling wood or coal," was for the purpose of making unmistakably clear the original intention and meaning, and removing any possible doubt that there might be upon this point.    The amendment may have been passed in consequence of the claim of such persons that their delivery-wagons were not included in the original ordinance, and for the purpose of preventing like claims in the future.

2. The second ground in the petition for certiorari is, that "the charter of the City of Macon does not authorize the mayor and council of the city to levy and collect said tax."    We think that the power to levy and collect the license tax in question is clearly given in section 72 of the charter of the city.    That section gives to the mayor and council power " to license drays, hacks, and other

vehicles used for business purposes, and to regulate the same." Acts 1893, p. 261. The power here conferred is certainly broad enough to authorize the municipal authorities to levy a license tax on wagons used by a coal-merchant for the purpose of delivering coal to his customers, as such wagons are clearly used for business purposes. Counsel for plaintiff in error seem to recognize this, but contend that the expression, "used for business purposes," is limited and explained by the provision in section 83, giving to the mayor and council power "to license all vehicles within the city and to limit the rates of freight and passage on the same." They contend that, construing the quoted provisions of these two sections together, and "applying the well-settled principle of construction as to taxation by municipal corporations, that the power to tax must be clearly conferred before it can be exercised, it will be observed that it was the intention of the legislature to authorize the imposition of a tax on that class of vehicles that were used for the purposes of revenue," and that "section 83 makes clear what was intended by the words, 'for business purposes,' used in section 72." We think it would be a strained and unnatural construction to hold that the power to license all vehicles used for business purposes, which is conferred in section 72, is limited by section 83 to such vehicles only as are used for the purpose of transporting freight, or passengers, for pay. It does not seem reasonable to suppose that the legislature, in the same act, would have twice conferred the same power, for the same purpose. The more reasonable construction is, that the General Assembly, in section 72, was dealing with all vehicles used for business purposes, mainly in order to confer upon the municipal authorities the power to license all such vehicles; while in section 83 it was dealing with vehicles used by common carriers, engaged in the business of transporting freight, or passengers, mainly for the purpose of conferring upon the municipality the power to limit the rates for freight or passage upon the same. We are clearly of opinion that under the charter of the City of Macon its municipal authorities had the power to levy and collect a license tax on wagons used by a coal-merchant for the purpose of delivering coal to his customers.

3. The third and last ground in the petition for certiorari was, that the recorder had no jurisdiction of the case, "for the reason that the ordinance of the City of Macon which authorizes the said

recorder to impose a penalty upon any person for failure to pay tax is absolutely null and void, in that the charter of the City of Macon does not authorize the Mayor and Council of the City of Macon to make" the failure. "to pay a license or business tax a crime." The ordinance for the violation of which the plaintiff in error was tried and convicted does not make the failure " to pay a license or business tax a crime," but it makes the offense consist in "doing business without a license." The municipal corporation could not enforce the collection of a license tax by imprisonment, nor punish a person for his mere failure to pay the same; but it had the power to pass and enforce an ordinance making it an offense·to do business in the city without obtaining the license, or licenses, required by an ordinance, or ordinances, enacted in pursuance· of authority contained in its charter. It is one thing to make the mere non-payment of taxes a crime, and another thing to make it an offense to do business without procuring the license required by law.

There was no error in overruling the certiorari.

*Judgment affirmed. All the Justices concurring, except Little, J., absent.*