## HEWIN *et al. v.* CITY OF ATLANTA.

1. An agreement between a number of merchants and a corporation provided that the former should print the names of the latter in its subscribers' directory and circulate a number of copies of the book in a named city, and that the merchants should purchase of the corporation a number of so-called trading stamps, to be delivered to customers with their purchases (and not to be otherwise disposed of), and by them preserved and pasted in the books furnished by the corporation until a certain number had been secured, when they should be presented to the corporation in exchange for the customer's choice of certain articles kept in stock by the corporation.  *Held :* (1) That the furnishing of the trading stamps by a merchant to his customers did not constitute a business separate and distinct from that of selling merchandise, but was merely an instrumentality in or an incident to that business, being in its nature incapable of such separate existence as to constitute of itself a business in either a commercial or a legal sense.   (2) That authority in a municipal charter " to make just and proper classification of business for taxation," and " to classify business and arrange the various business,

trades, and professions carried on in said city into such classes of subjects for taxation as may be just and proper," did not authorize the passage of an ordinance separating from the business of selling merchandise the incident of furnishing trading stamps for the purpose of increasing the sale of merchandise and classifying the furnishing of such stamps as a separate business subject to taxation. (3) That, whether the furnishing of the trading stamps be treated as a gift or as a part of the contract of sale of the merchandise which is delivered at the time the stamps are furnished, the furnishing of the stamps does not constitute a business subject to be taxed under charter authority to classify and tax business. (4) That the word "business" in a commercial or legal sense means something done or carried on for a livelihood, profit, or the like. (5) That even if the General Assembly is authorized to impose a tax upon one who gives away his property, the giving away of property is not a business within the meaning of a charter provision authorizing the taxation of business.

2. An application for an injunction, filed jointly by the trading stamp company and one or more merchants who are its customers, seeking to enjoin the collection of a tax imposed under an ordinance of the character above referred to, is not bad for misjoinder of parties.

3. Persons against whom an unlawful exaction in the form of a tax is sought to be made may unite in an application for an injunction to restrain the collection of the tax, and are not compelled to pay the same and bring separate suits against the tax officer for damages.

Argued January 19, — Decided January 27, 1905.

Petition for injunction. Before Judge Lumpkin. Fulton superior court. December 10, 1904.

S. W. Hewin and the Atlanta Trading Stamp Company, a corporation, filed a petition against the City of Atlanta, in which an injunction was prayed to restrain the city from enforcing an ordinance under which a business tax had been levied upon all persons furnishing "trading stamps to their customers." W. D. Payne filed an intervention, and was duly made a party. The Atlanta Milling Company, a corporation, also filed an intervention and was made a party, but its name was subsequently stricken from the case. The defendant filed both a demurrer and an answer. At the hearing the judge refused the injunction prayed for, and Hewin, Payne, and the Atlanta Trading Stamp Company excepted. The Trading Stamp Company entered into an agreement with its coplaintiffs and other merchants in the city of Atlanta, the material parts of which are as follows: The Trading Stamp Company agrees "to print in the directory of their subscribers' book the name, business, and address of the party of the second part. To deliver to the people of ———— said

books, soliciting the trade of such persons and explaining to them how to use the same. To advertise, and in every way to use their best endeavor to promote the business interest and trade of the party of the second part." The merchant agrees: "(1) To receive of the party of the first part a sufficient number of trading stamps to be supplied as discounts for cash trade to all persons who may call for them; and the party of the second part also agrees to give out such stamps as follows: one stamp to be given for each and every ten cents represented in a purchase; ten stamps for one dollar, etc. Said party of the second part also agrees not to sell said stamps or dispose of them in any other way. (2) To pay the party of the first part 50 cents per hundred for all stamps disposed of; and to make weekly settlements with the party of the first part for each full page of stamps used. (3) To co-operate in every way possible with the party of the first part in promoting the best interests of all merchants named in said subscribers' book." The nature of the trading stamp business and the elements which compose it are fully set forth in the record, and it appears that three distinct factors co-operate to produce the business: (1) The Trading Stamp Company. (2) The retail merchant. (3) The stamp collector. The stamp company maintains a store in which are kept a large number of articles commonly used as necessaries and adornments for the house and kitchen. These articles are matters of general commerce, their sale is not prohibited by the State, nor do they affect the public health or safety. They are not sold by the stamp company. The stamp company issues small books which contain a directory of the merchants who give its stamps, with the address of the merchant and the character of his stock. These books contain a sufficient number of blank pages in which are pasted the stamps as collected by the retail purchaser. A book is completed when it contains 990 of the stamps. Canvassers are sent out into the city by the stamp company, who invite the proposed retail purchaser to visit the store and inspect the stock of goods carried by the company. When he does this, it is explained to him that by paying cash for his purchases from any of the merchants whose names are in the book he will be given a stamp for each 10 cents, ten stamps for $1.00, and so on. He is informed that in order to obtain the stamps he will pay no more for the

article actually purchased than he would pay if he purchased either on credit or the same article from a merchant who does not give the stamp. The cash purchase with a request for the stamp does not increase the price paid for the article which is the subject-matter of the sale. He is told to paste his stamps in the book given him, and when he has accumulated 990 stamps he will then be free to select any article he may desire in the store of the company.

The company explains to the merchant that it will sell him the pad of stamps for $5, that by using the stamps he will increase his cash trade; his business will be advertised by the stamp company through its canvassers, by its books, and by it in the newspapers. He contracts to give the stamps at the ratio of one for each ten cents only upon cash purchases. He stipulates that he will not give the stamps for credit purchases; nor will he sell the stamp by itself. Briefly stated, the company sells to the merchant a pad of stamps and in return advertises his business. The merchant gives the stamps to his customers for cash purchases. The customer when he obtains a book presents it to the trading stamp company and takes away the article selected by him. There are advantages derived by each of the three parties to this transaction. The pad of stamps costs the company but little for the printing. They are upon common paper with mucilage applied to the back. From a mere sale of the stamp it derives a large gross profit. Its expenses consist of taxes, license fee, clerk hire, canvassers, salaries, insurance, and the price paid for the articles with which it redeems the book. The merchant by getting cash is enabled to discount his own bills by the payment of cash. He is saved the losses which are incident to a credit business, such as failure, expense of litigation incurred in the attempt to collect accounts, bookkeeper's hire, stationery, and so on. But the chief benefit derived by the merchant is the novel way in which his business is advertised. In place of paying a high price for an advertisement in the newspaper which is read by but a few of the total subscribers and followed up by a still less number, he pays, by using the trading stamps, only for an advertisement which actually produces a customer with cash. It is a system of advertising which is claimed to involve no waste and to be direct, effective, and immediate in producing

material results.   The consumer pays no more for the article purchased when the stamp accompanies it than he does by purchasing the article either for credit or from a merchant who does not give the stamp.   By paying cash he avoids, to a large extent, the evils which are incident to credit purchases.   By merely preserving the stamps until his book is completed he ultimately obtains an article of considerable value.   When the cost of conducting the business is deducted, the trading stamp company realizes whatever profit is derived from the sale of the stamps to the merchant.   The business is one into which the element of chance does not enter in any of its various steps.   The price paid by the merchant to the company is uniform.   It is $5 for a book of stamps.   The stamps are all alike.   None of them possess any inherent value; one is the exact equivalent in every respect of all the others.   No chance is injected between the merchant and the collector.   The merchant is required to give at the ratio of one stamp for every ten cents.   One hundred dollars spent at separate times in dime purchases will produce exactly the same number as one hundred dollars spent in one purchase. No chance appears in the transaction between the collector and the company.   When the book is produced and marked cancelled, the one producing it wanders at will throughout the store of the company; and when he has determined which article he will take, it is pointed out by him, his address taken, and the article delivered.   The article is not selected by any turn of dice or cards. The right to an article is determined alone by the physical fact of producing a book containing 990 stamps.

The Atlanta Trading Stamp Company opened its store in Atlanta, and a number of merchants bought stamps and were using the same in their business according to the method outlined in the foregoing summary.   In March, 1904, the mayor and general council of Atlanta adopted an ordinance, the portions of which material to the present case being as follows:

" 1.  Be it ordained by the Mayor and General Council, that any person, firm, or corporation who furnish trading stamps, coupons, gift schemes, rebate checks, or punch cards, or similar stamps or cards, as a part of or premium upon the sales of goods, wares, or merchandise, shall pay an annual license therefor of one hundred ($100) dollars, no license to be issued for less than the sum named for one year.

" 2. Be it further ordained that the furnishing of the stamps, coupons, etc., named in section one (1) of this ordinance is hereby classified as a separate business, and the above license is fixed thereon for the furnishing of said articles, alone or in connection with another business; and provided further that this ordinance shall not be enforced until on and after July 1, 1904."

This ordinance was attacked in the petition upon numerous grounds, and the bill of exceptions assigns error upon the refusal of the judge to grant an injunction upon each of the grounds upon which the ordinance is attacked. The assignments of error which are referred to in the opinion are as follows: "Because the mere gift of the stamp was not a business, trade, calling, avocation, or profession, and could not be classified as such by the City of Atlanta, nor could said city under its charter require the license in question, or any other license for the furnishing of such stamps by the merchant." " Because the furnishing of stamps by the merchant was a mere incident or method of conducting the business, and no power was conferred upon the City of Atlanta to require a license for the incidents of a business or the methods or means by which it was carried on." " Because under the charter of said city the power of the city to require a license for a business which paid an ad valorem tax was limited to $50." "Because the attempted classification by said ordinance was purely arbitrary and fanciful, and neither just nor proper."

*Rosser & Brandon* and *John L. Hopkins & Sons*, for plaintiffs.
*James L. Mayson* and *William P. Hill*, for defendant.

COBB, J. The legality of the trading stamp business has been the subject of numerous decisions. It has been held, in a number of cases, that there is nothing in the business which subjects it to the control of the State or its subordinate public corporations under the police power. While the question has never been before this court, rulings in other States seem with practical, even if not entire, unanimity to concur in the conclusion, not only that the business is legitimate, but that the right to engage in it without undue interference from States and municipalities is guaranteed by the constitution of the United States to the same extent, and subject only to the same restrictions, that can be placed around a person engaged in any lawful business not within

the range of the police power. Among the numerous cases that might be cited on this question we call attention to the following: City of Winston v. Beeson (N. C.), 47 S. E. 457; State v. Dodge (Vt.), 56 Atl. 983; State v. Ramseyer (N. H.), 58 Atl. 958; State v. Shugart (Ala.), 35 So. 28; Long v. State (Md.), 12 L. R. A. 425; Com. v. Sisson (Mass.), 60 N. E. 385; People v. Gillson (N. Y.), 17 N. E. 343; Young v. Com. (Va.), 45 S. E. 327. See also 57 Cent. Law J. 421. But the legality of the trading stamp business is not involved in this case. The City of Atlanta has not proceeded under the police power. It has by its ordinance treated the furnishing of stamps by merchants as a business and attempted to tax it as such; the ordinance attempting to place it as a business upon exactly the same footing with other classes of business not within the range of legislation under the police power delegated to the city. While the tax levied is referred to in the ordinance as a license, the ordinance, taken as a whole, shows that it is not to be treated as a license in the strict sense of that term, but simply as a business tax imposed upon the merchants just as similar taxes are imposed upon others engaged in pursuits and avocations which are not regulated by the city under its police power. The City of Atlanta has authority under its charter to impose a tax upon any person carrying on "any trade, business, calling, or avocation, or profession" within the city, not to exceed $200 in any case, and not exceeding $50 where the person also pays an ad valorem tax on merchandise or materials. It has also power "to classify business, and arrange the various business, trades, and professions carried on in said city, into such classes of subjects for taxation as may be just and proper." And also, "to make a just and proper classification of business for taxation." See Anderson's Code of Atlanta (1899), §§ 64, 65, 250. The ordinance treats the furnishing of trading stamps by a seller of merchandise to his customers as a business and taxes it as such. It is therefore unnecessary to determine whether one thus engaged in furnishing trading stamps is carrying on a "trade, calling, or avocation, or profession;" the authorities seeking to proceed against the merchants under their power to tax business, and not having sought to classify the furnishing of stamps under any of the other occupations referred to. The questions to be determined, as the case is now presented, are, whether the retail mer-

chant who furnishes trading stamps to his customers, under a contract with the Trading Stamp Company as set forth in the statement of facts, is engaged in a *business* within the meaning of the charter of the city authorizing a tax to be imposed upon persons engaged in business; and whether the business is of such a character that it can be disconnected and isolated from the other business of the retail merchant in such a way as to make the retail merchant a member of two classes for the purposes of taxation, that is, a merchant and a furnisher of trading stamps. It is conceded that the trading stamp company is engaged in a business, and the record discloses that it has been taxed and has paid the tax imposed upon it. But is a merchant who simply furnishes the stamps purchased by him from the trading stamp company and delivers them according to the contract into which he has entered, that is, to cash customers, in so doing engaged in a business at all; and, if so, is that business one actually separate and distinct, and legally severable from his business as a merchant, within the meaning of the charter of Atlanta conferring power and authority to classify business for taxation? If the delivery of the trading stamps to a cash customer is purely voluntary as between the merchant and his customer, the transaction being without consideration — a mere gift, then we suppose no one would contend that in delivering the stamps under such circumstances the merchant was engaged in a business at all.

While the word " business," as used colloquially, carries with it a very broad meaning, still, as used in its legal and commercial sense, it applies only to that in which one engages for the purpose of livelihood, profit, or the like. This idea of business runs through all of the definitions contained in the dictionaries. This interpretation of the word "business" was recognized in the case of *Brush Electric Light Company* v. *Wells*, 110 *Ga.* 198. If the furnishing of stamps by a retail merchant to his customers is therefore a mere gift, it can not be a business within the ordinary and usual meaning of that term as used in the commercial world. Laws and ordinances imposing taxes are strictly construed; and authority to tax a business will not in such legislation be construed to authorize the taxing of one engaged in transactions from which he can not possibly derive any profit, which can not be the means of a livelihood, and which can not be carried on without

inevitable loss, persons so engaged not being engaged in any business within the ordinary meaning of that term, nor within the meaning in which it must have been used in laws authorizing or imposing taxes. But it is said that the furnishing of the trading stamps is not a gift; that when the merchant holds out to the world that he will furnish trading stamps to cash customers, such purchasers are entitled to demand the delivery of the stamps, and therefore a cash transaction involves a sale of the article of merchandise and also of the stamp; that while the stamp has no intrinsic value, it is a symbol of that which has value; that the title to the article finally delivered by the stamp company to the stamp collector is really sold by the merchant when the stamp is delivered; and that the merchant would then be practically engaged in selling every character of article which it is possible for the stamp collector to obtain from the stamp company upon the presentation of the stamp book. If the stamp is sold with the article with which it is delivered, of course the title to the stamp passes immediately upon delivery, and this would also be true if the furnishing of the stamp were a mere gift. The cash purchaser owns the stamp from the time it is delivered into his possession. But can it be properly said that the title to that which is finally purchased with the stamps passes to the customer of the retail merchant at the time the stamp is delivered ? Suppose 100 stamps represent 100 different transactions with 100 different merchants, none of whom are engaged in the furniture business, and upon presentation of the stamps to the stamp company a chair is delivered; could it be contended that each of these 100 merchants is subject to classification as a dealer in furniture on account of the delivery of this chair, and, if not, would they all be taxable as joint sellers of some character ? We do not think the contention is sound that the title to the article finally selected by the stamp collector passes at the time of the delivery of the stamp, though the title to the stamp does pass, and whatever that is worth, whatever its purchasing power, is the property of the stamp collector. The stamp simply represents the contract of the stamp company, that, when a given number are presented, the holder of the stamps can select an article from the stock of the company in exchange for the stamps. The stamps in certain quantities have a purchasing power with the trading stamp company, and their

value is simply the result of this purchasing power; and if the merchant is to be treated as the seller of the stamps at all, he simply sells the right to demand of the stamp company what it has agreed to furnish, and does not sell the article which the trading stamp company actually furnishes to the collector when the book is delivered. The transaction does not differ in essential particulars from one where a merchant, in consideration of a $100 purchase, returns to the purchaser $5 in gold. The title to the $5 vests in the purchaser upon delivery, with the right to use it to purchase any article that it will buy; but certainly the title to the article subsequently purchased was never in the merchant and can not pass with the delivery to the customer of the $5. The result would be the same if, instead of giving $5, the merchant gave the purchaser an order on another merchant for an article worth $5. And this would be the same as if the purchaser were given fifty different orders at different times. We do not think that even treating the furnishing of the trading stamps as a sale, it is a sale of the article finally procured from the stamp company, so as to make the merchant furnishing the stamp one engaged in the business of selling that particular article, whatever it may be. If the transaction partakes of the nature of a sale at all, it is simply a sale of the stamp.

Treating the furnishing of the trading stamps as a sale, and a sale of the trading stamps, is it a business which can be carried on for a livelihood, profit, or the like, when disconnected from every other business? When coupled with another business, it may result in profit flowing to the owner of that business. Standing alone it can not be made the subject of profit, even if it can be carried on at all. Under the contract between the stamp company and the merchant, and under the plan, scheme, or device, whatever it may be properly characterized, such a thing as a person engaged in the furnishing of trading stamps and doing nothing else does not come within the remotest range of the contract or the scheme therein provided for. Attached to a business the furnishing of stamps thrives, and profits result. Detached from the business it instantly dies; and it dies not by withering gradually away, but its death is instantaneous. The business of the merchant can live without the sale of trading stamps, but the furnishing of trading stamps can not live unless there is a busi-

ness to which it can fasten and from which it can draw its life
blood.     What has been said is applicable no matter what the
business to which the furnishing of trading stamps is attached,
whether it be that of a merchant or of one who follows a trade
or profession.    If an occupation is so made up as to include two
or more separate and distinct classes of business, each of which
could be maintained as a separate business, that is, a business in
the sense in which that term is above used, then, under the power
to classify subjects of business for taxation, the municipal authori-
ties might be empowered to impose a separate tax upon each class.
of business embraced within this occupation.  The department
store is a familiar illustration of different classes of business going
to make up one occupation.    So it is with the hotel keeper, who,
in addition to furnishing lodging and meals, sells cigars, liquors,
newspapers, operates a barber shop, etc.    So where a merchant
undertakes himself to deliver his goods to his customers, and
operates in connection therewith the business of delivering goods.
by wagon.    See *Johnson* v. *Macon*, 114 *Ga.* 426 (2).    In *Macon
Sash Co.* v. *Macon*, 96 *Ga.* 23, a tax was imposed upon a wagon
which was used by one engaged in the business of contracting
and selling builders' supplies; and it was held that the owner of
the wagon was liable to the tax, notwithstanding he also paid a
tax imposed upon him as a contractor or builder.    In *Mayor of
Savannah* v. *Dehoney*, 55 *Ga.* 33, it was held that where the City
of Savannah had imposed a tax upon the owners or lessees of
public stables, and in the same ordinance there was a provision
imposing a tax upon every person engaged in the business of
transporting passengers by omnibuses, it was a question of fact
whether the use of omnibuses was an incident to the business of
one who was the owner of a public stable; and if so, such owner
would not be liable to a second tax because he used an omnibus,
in connection with the business in which he had been taxed.
See also *Mayor of Savannah* v. *Feeley*, 66 *Ga.* 34.    But where
the business is made up of different elements and there is only
one business, a municipal corporation, under a power to classify
business, can not separate this business into its different elements
and call that a business for taxation which from its nature is
dependent for its existence, not upon anything inherent in itself,
but upon its connection with the business which is itself subject.

to taxation.  In other words, the power of municipal corporations to tax mere incidents of business is not conferred by a charter which authorizes it to tax a business.  In *Rogers* v. *Sandersville,* 120 *Ga.* 192, it was held that where one engaged in the sale of soda posted bills advertising the sale of his goods, he was not engaged in business as a bill-poster, but was simply engaged in performing what was an incident to his business as a seller of soda, and was not liable to a tax under an ordinance imposing a tax upon all persons engaged in the business of a bill-poster. In the opinion Mr. Justice Lamar used the following language, which is appropriate to the present case:  " What he did was for the purpose of making or increasing sales, and the various steps leading· to that end were part and parcel of the business of selling."  It may be that the General Assembly would have authority to divide an occupation into its various elements and to tax each and also tax every incident of every business, but certain it is that a municipal corporation which is simply given the right to tax a business and classify business has not had conferred upon it authority either to divide a business into its elements for the taxation of each, or to tax that which is merely an' incident of a business and which could not alone from its very nature constitute a separate and distinct business.

In the cases above cited the furnishing of trading stamps by a merchant to his customers is sometimes referred to as a business; but a careful reading of the opinions will show that this term is used by the writers in its broad and colloquial sense, and that no question similar to the one now before us was under consideration in any of the cases.  There are a few cases where the question of taxing the use of trading stamps by merchants has been the subject of decision.  In Humes *v.* Fort Smith, 93 Fed. 857, an ordinance which had the effect to impose a tax upon the use of trading stamps by merchants was upheld, but this tax was levied under an act of the legislature of· Arkansas authorizing cities of certain classes to license, tax, and regulate gift enterprises, and the act defined the term "gift enterprises" so as to include the use of trading stamps by merchants.  This was also true of Lansburgh *v.* District of Columbia, 56 Alb. Law J. 488, where the tax was imposed upon gift enterprises under an act of Congress which defined this expression in such a way as to include

the use of trading stamps by merchants.    In Fleetwood v. Read (Wash.), 58 Pac. 665, 47 L. R. A. 205, the Supreme Court of Washington held that under an act which authorized a city to grant licenses for any "lawful purpose," a license tax for the purpose of revenue could be imposed upon merchants who used trading stamps.    The question as to whether the furnishing of trading stamps by merchants was in itself a business so as to be thus classified for the purposes of taxation was not involved in that case.    In Ex Parte McKenna, 126 Cal. 429, 58 Pac. 916, the Supreme Court of California held that a tax on merchants using trading stamps could not be justified as a tax on a lottery, since a lottery was unlawful and could not be licensed, and that the mere use by one merchant of trading stamps when other merchants did not engage in their use was not a sufficient reason for passing an ordinance imposing a tax burdensome in amount, if not prohibitory, on all merchants issuing trading stamps, and that such an ordinance was discriminating in its nature, unreasonable, and void as in restraint of trade.    Mr. McQuillin, in his treatise on Municipal Ordinances (page 659), in enumerating the cases in which a tax upon trades, occupations, avocations, etc., had been sustained, mentions gift enterprises, and in a note says the term "gift enterprise" includes trading stamps and similar schemes, the authorities cited by him to sustain this being the Humes and Fleetwood cases, supra ; and these cases, as has been shown, dealt with legislative acts defining gift enterprises.    In its ultimate analysis the use of trading stamps by a merchant is simply a unique and attractive form of advertising, resorted to for the purpose of increasing trade.    In the strict commercial sense of the term "business" it is not a business at all ; it is simply a mode or manner of business, or an instrumentality or incident of a business.    When resorted to for the purpose of increasing the business to which it is annexed, it occupies the same relation to that business as newspaper advertising, circulars, dodgers, and the like ; and if the City of Atlanta can classify as a business advertising through the medium of the trading stamp, it can also classify as a business advertising through the journals of the city, or through the medium of a person employed to walk the streets with the sandwich upon which the goods, wares, and merchandise of a merchant are advertised ; or the employment of a dwarf who

carries upon his shoulder a barrel upon which the wares of a merchant are advertised, and stops at every street corner and seats himself upon it.    These and other methods equally unique have been resorted to; but no one has ever pretended that the merchant in thus attempting to increase his profits from the sale of his goods was engaging in a new business, and not simply carrying on the business of selling goods.    In the case of *Keely* v. *Atlanta*, 69 *Ga.* 583, in which the provisions of the charter of Atlanta above referred to were under consideration, it was held that these provisions conferred power upon the municipal authorities to divide a general merchandise business into specific classes, such as dry goods, boots and shoes, and the like, and to levy a tax upon each of such classes.    There is nothing in that decision which would authorize the taxing of the mere incidents of a business which in themselves could not exist without the business to which they were annexed.    We think that the classification in the ordinance under consideration was unreasonable and arbitrary, and could in no sense be declared just and proper, as the General Assembly has determined must be the case with all classifications for taxation made by the City of Atlanta.

2. It is contended, though, that even if the judge erred in his conclusion as to the validity of the ordinance, the demurrer was properly sustained, for the reason that there was a misjoinder of parties; that the application for injunction could not properly be made jointly by the trading stamp company and one or more merchants who were its customers.    The trading stamp company was not a necessary party, but it seems to us that it was a proper party.    While it had paid its tax, and was not affected by the ordinance so far as further taxation upon its business was concerned, the effect of the ordinance was to embarrass and hamper those who dealt with it and diminish its business, even if it did not have the effect to entirely destroy it.    If the City of Atlanta were to impose a business tax upon a merchant, and then impose a tax upon every customer who entered his door, it would be at once apparent that the merchant was vitally and pecuniarily interested in the question as to whether his customers should be burdened with this tax.    In such a case it would seem that the court would entertain a joint application by the merchant and his customers to restrain the enforcement of the tax attempted

to be collected without authority of law upon the customers, when the effect of the collection would be to interfere with the customer by imposing a burden upon his right to buy, and to interfere with the merchant by impairing or destroying his right to sell.

3. It is also contended that injunction was not the remedy; that the parties should have paid the tax under protest and then have brought suit against the tax officer for damages. If a lawful tax had been levied, and the question was whether the individual came within the description of persons subject to the tax, a question of fact would have been raised, and equity would not interfere, but would remit the party to his action at law. But where there is no law authorizing the collection of the tax, it is no tax, and equity will enjoin the attempt to collect it by any one at the instance of the person who is about to be made the subject of the illegal exaction. *Decker* v. *McGowan*, 59 *Ga.* 805; *Vanover* v. *Davis*, 27 *Ga.* 354. The ordinance was void. There was hence no law authorizing the imposition of the tax. It was no tax; it was nothing; and the one attempting to enforce its collection was a wrong-doer; and those against whom the exaction was sought to be made could properly unite in an application to a court of equity to enjoin the enforcement of the ordinance, and would not be driven to their separate actions of trespass against the wrong-doer who, under the guise of a tax officer, was attempting to collect that for which there was no authority.

*Judgment reversed. All the Justices concur.*