## MENTE v. EISNER, Internal Revenue Collector. *

(Circuit Court of Appeals, Second Circuit. April 14, 1920.)

No. 192.

**Internal revenue ⚬⚬7—Income tax; loss sustained in outside speculation not deductible; "losses incurred in trade."**

Under Income Tax Act Oct. 3, 1913, § II, subd. 2B, allowing as a deduction from gross income losses "incurred in trade," such deductions are limited to losses incurred in the actual business of the taxpayer, as distinguished from isolated transactions, and do not include losses sustained through dealings on an exchange by one engaged in another regular business.

Manton, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Southern District of New York.

Action by Eugene W. Mente against Mark Eisner, Collector of Internal Revenue. Judgment for defendant, and plaintiff brings error. Affirmed.

Frederic H. Cowden, of New York City, for plaintiff in error.

Francis G. Caffey, U. S. Atty., of New York City (Vincent H. Rothwell, of New York City, of counsel), for defendant in error.

Before WARD, ROGERS, and MANTON, Circuit Judges.

WARD, Circuit Judge. Section II, subdivision 2B, of the Act of October 3, 1913 (38 Stat. 167), provides that in computing net income for purposes of normal tax there shall be allowed as a deduction: " * * * Fourth, losses actually sustained during the year, incurred in trade or arising from fires, storms, or shipwreck, and not compensated for by insurance or otherwise."

Mente, a member of the firm of Mente & Co., engaged in the business of manufacturing jute bags and bagging, cotton bags and materials for covering cotton bales, filed his income returns for the year March 1 to December 31, 1913, and for the whole year of 1914. He had for some three years been buying and selling cotton on the Cotton Exchange for his individual account, in no way connected with the business of Mente & Co., and he deducted from his gross income in each year losses sustained in the year resulting from these transactions as "losses incurred in trade."

Eisner, as collector of internal revenue for the Third district of the state of New York, assessed an additional tax upon these deductions, which Mente paid under protest, taking an appeal to the Commissioner of Internal Revenue under sections 3220 and 3228, U. S. Rev. Stat. (Comp. St. §§ 5944, 5951), and the regulations of the Secretary of the Treasury in pursuance thereof who rejected his claim. Thereupon Mente began this action against Eisner, as collector, to recover the amounts so paid with interest and costs.

⚬⚬For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

266 F.—11    *Certiorari denied 254 U. S. —, 41 Sup. Ct. 8, 65 L. Ed. —.

Treasury Decision 2090, dated October 14, 1914, reads:

"Loss, to be deductible, must be an absolute loss, not a speculative or fluctuating valuation of continuing investment, but must be an actual loss, actually sustained and ascertained, during the tax year for which the deduction is sought to be made; it must be incurred in trade and be determined and ascertained upon an actual, a completed, a closed transaction. The term 'in trade,' as used in the law, is held to mean the trade or trades in which the person making the return is engaged; that is, in which he has invested money otherwise than for the purpose of being employed in isolated transactions, and to which he devotes at least a part of his time and attention. A person may engage in more than one trade, and may deduct losses incurred in all of them: Provided that in each trade the above requirements are met. As to losses on stocks, grain, cotton, etc., if these are incurred by a person engaged in trade, to which the buying and selling of stocks, etc., are incident as a part of the business, as by a member of a stock, grain, or cotton exchange, such losses may be deducted. A person can be engaged in more than one business, but it must be clearly shown in such cases that he is actually a dealer, or trader, or manufacturer, or whatever the occupation may be, and is actually engaged in one or more lines of recognized business, before losses can be claimed with respect to either or more than one line of business, and his status as such dealer must be clearly established."

Both parties having moved for the direction of a verdict, Judge Grubb directed a verdict in favor of the defendant. We think that the language "losses incurred in trade" are correctly construed by the Treasury Department as meaning in the actual business of the taxpayer, as distinguished from isolated transactions. If it had been intended to permit all losses to be deducted, it would have been easy to say so. Some effect must be given to the words "in trade."

There is an inconsistency in making profits derived from such transactions a part of the taxpayer's gross income and, on the other hand, allowing him no deduction for losses; but tax laws are not required to be perfect, or even consistent. It must be determined from the facts in each case whether or not the losses claimed to be deducted have been incurred in a business. In this case the court must be taken to have found as matter of fact that these transactions in 1913 and 1914 did not constitute a business. Such a finding is binding upon us.

Judgment affirmed.

MANTON, Circuit Judge. I dissent from the prevailing opinion and will state my reasons.

The controversy that gives rise to this action brings to this court for construction a provision of the Income Tax Law of October 3, 1913. Section 2, subd. B, thereof sets forth deductions allowed in computing net incomes. They are, first, the expenses of carrying on any business; second, interest on indebtedness; third, taxes; and, fourth, "losses actually sustained during the year, incurred in trade, or arising from fires, storms, or shipwreck and not compensated for by insurance or otherwise." The plaintiff in error made his return for the last ten months of 1913 and the year 1914, and paid his taxes due as shown by these returns. For the period from March to December 31, 1913, he deducted from his gross income the sum of $31,555, claiming a right so to do because of loss sustained during this period of the year, and claims it occurred as a loss in trade. In his return for 1914,

he deducted $65,245.33 pursuant to the same contention, contending it was a loss sustained in trade. These losses resulted from the purchase of cotton, through brokers, upon the New York Cotton Exchange, and the subsequent sale of such cotton in the same manner at a lower price. The method of doing this business was as follows: The plaintiff in error instructed some person to buy for him a certain number of bales of cotton, and that person sought a seller, or the agent of a seller, and secured from the seller or agent an agreement to deliver cotton to the plaintiff in error at a future date at a certain price. He delivered to the seller or his agent the plaintiff in error's agreement to buy upon the same terms. It was in such transactions that the plaintiff in error met with his losses. This method of trading is a permitted business of the Cotton Exchange.

The question presented is: Does this constitute a transaction "in trade," within the meaning of section 2, subd. B, of the Income Tax Law? This kind of trade is referred to as dealing in cotton futures. The goods were not yet in existence; but does that alter the nature of the transaction? Does the fact that the goods are to be delivered in the future so distinguish the purchase as to make it something else than a deal "in trade"? In the commercial life of the day perhaps more than one-half of the products ultimately sold may be said to be contracted for long before they have come into existence. The test of obligation, either for profit or loss, must necessarily be measured by the contractual relations as expressed by the written agreement. The fact that there may be a transfer of the contract at a lower price or a higher price does not change the nature of the transaction. The contract delivered fixes the obligation of the parties and denotes a sale and a purchase. A certificate of stock, for example, in itself merely evidences a fractional undivided interest in real, personal, or corporate property. It passes from one to the other, and is regarded in itself as property. Business transactions in which the title of the property is transferred without delivery are frequent in this day. The word "trade," in its normal and natural meaning, cannot be so restricted as to apply only to transactions where actual merchandise is handled by the taxpayer, or where the specific merchandise is designated by the contract. The Treasury Department has made a ruling under section 5, known as Decision No. 2005, dated July 8, 1914, which provides as follows:

"Losses may be sustained by individuals or corporations on personal or real property. Only those losses are deductible which are sustained during the tax year 'in trade'—that is, the business which engages the time, attention, and labor of any one for the purpose of livelihood, profit, or improvement. Loss, to be deductible, must be an absolute loss, not a speculative or fluctuating valuation of continuing investment, but must be an actual loss, actually sustained and ascertained during the tax year for which the deduction is sought to be made; it must be incurred in trade, and be determined and ascertained upon an actual, a completed, a closed transaction.

"Losses sustained by individuals or corporations from the sale of or dealings in personal or real property growing out of ownership or use of or interest in such property will not be deductible at all, unless they are an incident of, connected with, and grow out of the business of the individual or corporation sustaining the loss, and are ascertained, determined, and fixed as abso-

lute in the above sense within the taxable year in which the deduction is sought to be made. * * * "

And Decision No. 2090, dated December 14, 1914, is as follows:

"Loss, to be deductible, must be an absolute loss, not a speculative or fluctuating valuation of continuing investment, but must be an actual loss, actually sustained and ascertained, during the tax year for which the deduction is sought to be made; it must be incurred in trade, and be determined and ascertained upon an actual, a completed, a closed transaction. The term 'in trade,' as used in the law, is held to mean the trade or trades in which the person making the return is engaged; that is, in which he has invested money otherwise than for the purpose of being employed in isolated transactions, and to which he devotes at least a part of his time and attention. A person may engage in more than one trade, and may deduct losses incurred in all of them, provided that in each trade the above requirements are met. As to losses on stocks, grain, cotton, etc., if these are incurred by a person engaged in trade to which the buying and selling of stocks, etc., are incident as a part of the business, as by a member of a stock, grain, or cotton exchange, such losses may be deducted. A person can be engaged in more than one business, but it must be clearly shown in such cases that he is actually a dealer, or trader, or manufacturer, or whatever the occupation may be, and is actually engaged in one or more lines of recognized business, before losses can be claimed with respect to either or more than one line of business, and his status as such dealer must be clearly established."

I do not think that Congress had in mind any such limitations of the words "losses in trade" when it enacted the income tax. Bouvier's Law Dictionary refers to "trade" as business, or any transaction or dealing by way of sale or exchange. The courts have adopted this view. May v. Sloan, 101 U. S. 231, 25 L. Ed. 797; In re H. R. Leighton (D. C.) 147 Fed. 311; United States v. Douglas, 190 Fed. 482, 111 C. C. A. 314, 36 L. R. A. (N. S.) 1075. Nowhere has it been so restricted that it has been said that the man engaged in trade must give his habitual or principal attention to the occupation or employment. "Tradesman" or "trader," whether used separately or spoken of in connection with business, indicates one engaged in the barter, sale, or exchange of merchandise or commodities. In re Surety, etc., Co., 121 Fed. 73, 56 C. C. A. 654; In re Woodward, 30 Fed. Cas. 543.

Webster's Dictionary describes "trade" as follows:

"To barter, or to buy and sell; to be engaged in the exchange, purchase, or sale of goods, wares, merchandise, or anything else; to traffic; to bargain; to carry on commerce as a business."

"Trade," as used in the act, should be considered synonymous with business. But the defendant in error interprets the words "in trade" as "in his business." A broker, who acts only as a broker, receives his income solely from his commissions. But the decision of the Treasury Department would permit him to deduct losses sustained, if he bought and sold on his own account—"as and if they are incident as a part of the business, as by a member of a stock, grain, or cotton exchange, such losses may be deducted." The Treasury decision insists that, while admitting that a person may be engaged in more than one business, in order that he may deduct his losses, it must clearly be shown that he is actually engaged as a dealer, or trader, or manufacturer, or whatever the occupation may be. His status as such dealer must be clearly established.

But nothing can be found in the act itself to place any such restriction upon the phrase "in trade." The test is not to find out what his habitual business is, or to which he may expend the greater part of his time and effort, or what may be his principal business. The determining factor, as Congress expressed it, is: Was there a loss, and was it sustained in trade? This must be our guide in determining the right to deduct. Undoubtedly the purpose of the Treasury Decision seems to be to forbid deductions of losses which result from a speculative or fluctuating valuation of a continuing investment. But the tax is imposed on the profits so obtained. If Congress intended to make this restriction, it should have guarded against reduction of such loss in taxation by a phrase which would be clear. There is an element of speculation in every transaction. Such may be the result of the purchase of a house or piece of real estate. So it may be in the purchase of shares of stock. He may buy it in the best of faith for continued investment and find it necessary to sell in a low market because of his then needs. The tax laws cannot be based upon the intent of the person taxed; they must be based upon the facts as they exist and the results which follow. This court, in New York Life Ins. Co. v. Anderson, 263 Fed. 527, —— C. C. A. ——, decided January 14, 1920, considered the Act of August 5, 1909, which provided, as to net income:

"It shall be ascertained by deducting from the gross amount of the income * * * all losses * * * sustained within the year and not compensated by insurance or otherwise, including a reasonable allowance for depreciation of property."

It was held that loss of market value of stocks and bonds is depreciation.

The Act of 1918 (section 214, subd. 5 [40 Stat. 1067]), now permits the deduction of all losses occurring in transactions "entered into for profit." These losses may be deducted from profits arising from other transactions. It is inconsistent, in my opinion, to say that a broker, who deals in stocks and bonds, is engaged in trade, and may deduct his losses, and say that the plaintiff in error, who was engaged in the cotton bagging business, may not deduct the loss that he sustained trading in the market as described. His principal business was not dealing in cotton, but in bagging; but his transaction was in trade, and the losses flowing from this effort to make profit from his trade should be allowed him as a deduction. The fact that the law was amended as above indicated, effective in 1918, evinces a dissatisfaction with the interpretation which has been placed upon the previous law.

In my opinion, the plaintiff in error was entitled to deductions which he made, and should have a judgment to recover back payments which he made to the collector under protest.