IGNAZ SCHWINN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 8441.   Promulgated January 14, 1928.

*John E. Hughes, Esq.*, for the petitioner.
*J. W. Fisher, Esq.*, for the respondent.

OPINION.

LANSDON: The petitioner purchased 2,300 shares of stock of the Anaconda Copper Co. in December, 1919, and sold the same in June, 1924, at a loss of $73,472. The respondent treated said stock as "capital assets" within the meaning of section 208 of the Revenue Act of 1924, and determined the petitioner's income-tax liability for the year in question by subjecting said loss to the 12½ per cent limitation prescribed by subdivision (c) of that section and Act. The petitioner claims that said stock was property held by him primarily for sale in the course of his trade or business, and that from December, 1919, to the present time one of his businesses and, in fact, his principal business, has been that of speculating in stocks, grain and other commodities. Section 208 (a) (8) of the Revenue Act of 1924 provides in full as follows:

The term "capital assets" means property held by the taxpayer for more than two years (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale in the course of his trade or business.

The particular portion of the statute brought into consideration by the facts of this case is the phrase, "or property held by the taxpayer primarily for sale in the course of his trade or business." In other words, are the petitioner's speculations in stocks, grains and other commodities of such a nature as properly to be regarded as his trade or business?

It has been said that the word "business" has a wider scope than the word "trade." *Edgin* v. *Bell-Wayland Co.* (1915), 149 Pac. 1145, 1146. However, the word "trade" used in the Revenue Act of 1913 in connection with the deduction of losses, was construed as being synonymous with "business." See *Mente* v. *Eisner* (1920), 266 Fed. 161, certiorari denied, 254 U. S. 635; 41 Sup. Ct. 8. The statute under consideration uses the expression "his trade or business." As the two terms are used disjunctively in the Act, it will serve for the present to ascertain the legal significance of the word "business."

The word "business" is one which is used with widely varying meanings. It becomes necessary to determine, as best we may, the meaning in which it is used in the statute involved. The Revenue Act of 1924, under the heading of "Deductions Allowed Individuals" (section 214), allows as deductions, among others, in computing net income, losses incurred in trade or business, and also losses incurred in any transaction entered into for profit, though not connected with the trade or business. It is apparent from its descrip-

tion of deductible losses, that the statute differentiates between certain types of losses sustained. Losses from isolated transactions entered into for profit are separately considered from those incurred in trade or business. When the expression "trade or business" is used in the statute in connection with losses it would seem to refer to a regular occupation or calling of the taxpayer, for the purpose of livelihood or profit. This is one of the accepted definitions of the term "business" and is probably its most usual legal sense. *Flint* v. *Stone Tracy* Co. (1911), 220 U. S. 107, 171; 31 Sup. Ct. 342; *Hewin* v. *Atlanta* (1905), 121 Ga. 723; 49 S. E. 765, 768; *Easterbrook* v. *Hebrew Ladies' Orphan Society* (1912), 85 Conn. 289; 82 Atl. 561, 563; *Allen* v. *Commonwealth* (1905), 188 Mass. 59; 74 N. E. 287, 288. As to a similar conception of the word "trade," see *May* v. *Sloan* (1879), 101 U. S. 231, 237; *In re Charles Town Light & Power Co.* (1910), 183 Fed. 160, 163; *United States* v. *Douglas* (1911), 190 Fed. 482, 484.

It has been recognized by the courts and by the Bureau of Internal Revenue that a person can be engaged in more than one trade or business. *Mente* v. *Eisner, supra;* see, also, 17 Ruling Case Law, 487. It is not necessary under the language of the 1924 Act that the activities in question form the taxpayer's *principal* trade or business. It is sufficient that they may of themselves be regarded as an occupation or business. It is recognized that a single, isolated activity or transaction is not sufficient to constitute a business or vocation. *Cooper Manufacturing Co.* v. *Ferguson* (1885), 113 U. S. 727; *Woods* v. *Lewellyn* (1921), 289 Fed. 498; *Lederer* v. *Cadwalader* (1921), 274 Fed. 753. In the instant case, however, the petitioner devoted the largest part of his business time to, and made the most money from, speculating in stocks, grain and other commodities. Large sums of money were involved in his marginal dealings. In 1923 he had with Lamson Bros. & Co. some 112 transactions in grain and other commodities and 15 in securities; similarly in 1924, he made with the same broker approximately 91 transactions in grain and other commodities and about 30 in securities. These facts and circumstances would seem to meet the test of the reported decisions as to the principal business or occupation of an individual. In the case of *In re Mackey* (1901), 110 Fed. 355, the court said (pp. 358–359):

The chief occupation or business of one, so far as worldly pursuits are concerned, is that which is of principal concern to him, of some permanency in its nature, and on which he chiefly relies for his livelihood or as the means of acquiring wealth, great or small. That one may principally devote his physical exertions or his time to a given pursuit while one of the factors entitled to consideration, is not in all cases determinative of the question whether that pursuit is his chief occupation or business. One may own, reside on and operate

a farm and at the same time be engaged in the business of buying and selling stocks and other securities. The latter occupation may consume only an hour or two and the balance of the day be devoted by him to his farm, yet it does not follow that his chief occupation or business is not dealing in stocks or other securities. If such dealing is of principal concern to him and chiefly relied on by him for his subsistence and financial advancement, and if he treats it as of paramount importance to his welfare, he would not be within the category of persons chiefly engaged in farming, even were his farm to yield him some profit. Nor does the amount of capital invested necessarily determine in all cases what one's chief occupation or business is. It, like the amount of time devoted, is undoubtedly a factor to be considered, but often is not conclusive. One may erect a palatial residence in the country, and own the farm on which it stands. It becomes part of the farm, and the farm may be skillfully operated and yet not yield in profits a hundredth part of the interest on the investment. The owner may be engaged in profitable manufacturing or mercantile pursuits which enable him to pay in full the cost of his house, and thereafter maintain it from the profits on his business capital, though less than such cost. No one would in such case contend that the owner of the farm was chiefly engaged in farming because most of his capital was invested in it. It is evident that it is impracticable, if not impossible, to define with precision the facts which will in all cases determine whether one in engaged chiefly in farming, and that each case must be decided on its own circumstances. It may, however, legitimately be stated, generally, that, if it appears in a given case that one's occupation or business which is of principal concern to him, not ephemeral, but of some degree of permanency, and on which he mainly relies, for his livelihood and financial welfare, be other than farming, he is not " a person engaged chiefly in farming."

In view of the unimpeached and uncontradicted testimony of the petitioner to the effect that his principal business from 1919 to 1924 was speculating in stocks, and in further consideration of the legal authorities hereinabove mentioned, we have no hesitancy in holding that the loss resulting from the purchase and sale of the 2,300 shares of Anaconda copper stock was a loss sustained in 1924 with respect to property held primarily for sale in the course of the petitioner's trade or business. See *Bryce* v. *Keith* (1919), 257 Fed. 133; *Penrose* v. *Skinner* (1923), 298 Fed. 335, 338. Cf. *Wilson* v. *Eisner* (1922), 282 Fed. 38. The respondent was therefore in error in determining the petitioner's income-tax liability under section 208(c) of the Revenue Act of 1924. Under this view of the case it becomes unnecessary to pass upon the remaining issues raised by the petitioner and no opinion is expressed thereon.

*Judgment will be entered for the petitioner on 15 days' notice, under Rule 50.*