FRANCIS I. DU PONT *v.* PIERRE S. DU PONT, State Tax Commissioner.

*(September* 10, 1934.)

LAYTON, C. J., HARRINGTON and RICHARDS, J. J., sitting.

*Richards, Layton* and *Finger* for appellant.

*William H. Foulk* for appellee.

Superior Court for New Castle County, May Term, 1934.

LAYTON, C. J., delivering the opinion of the Court:

The facts are not in dispute. The question presented is whether the losses sustained by the taxable were losses arising from the operation of a business, in which case they were deductible, or capital losses within the statutory definition, and if so, deductible from capital gains only. It is to be determined whether the facts and circumstances surrounding the taxable's activities in the year 1930 establish his contention that he was operating a business, or that of the appellee, that the taxable was merely supervising his investments by changing them from time to time.

The Supreme Court of the United States has quoted with approval the definition of the term "business" as given in Bouvier's Law Dictionary as, "That which occupies the time, attention and labor of men for the purpose

of a livelihood or profit." Bouv. Law Dict. (Rawle's 3d Rev.) 406; *Flint v. Stone Tracy Co.,* 220 *U. S.* 107, 31 *S. Ct.* 342, 55 *L. Ed.* 389, *Ann. Cas.* 1912*B,* 1312; with the cautionary qualification that in each instance it must depend upon the particular facts. *Von Baumbach v. Sargent Land Co.,* 242 *U. S.* 503, 37 *S. Ct.* 201, 61 *L. Ed.* 460. See, also, 6 *Cyc.* 259. And, it will not be denied that the doing of a single act pertaining to a particular business will not be considered engaging in or carrying on the business; yet a series of such acts might be so considered. *Goddard v. Chaffee,* 2 *Allen (Mass.)* 395, 79 *Am. Dec.* 796; *Sterne v. State,* 20 *Ala.* 43, 46; *People v. Commissioners,* 23 *N. Y.* 242, 244.

There are certain *indicia* which may serve to characterize the term: the employment of capital in an enterprise, the devotion of time seriously and assiduously thereto, the establishment of an office and the employment of assistants, the idea and purpose of gain as distinguished from mere pleasure or indifference to loss or gain, activity, or a series of related acts, not sporadic or intermittent but continually recurring, for the purpose and to the end of producing gain. All these *indicia* are shown by the record before us, and the conclusion is irresistable that the taxable was engaged in the operation of a business as that term is defined and understood in the law.

The authorities cited by the appellee are not, we think, opposed to this view. In *Bedell v. Commissioner (C. C. A.),* 30 *F.(2d)* 622, 624, the taxable sought to place certain losses resulting from the sale of securities in 1919 into hotchpot with his income for 1918 and 1920 under *Section* 204 *(a)* (1) and *(b)* of the *Revenue Act of* 1918 (40 *Stat.* 1060), as losses resulting from the operation of a business. The taxable's business was retailing women's clothing through several corporations. It appeared that he spent approximately half his time in buying and selling for profit

real estate and negotiable securities; that he bought stocks and bonds through a number of brokers' offices, where he spent about three hours three or four days a week, and in one of which, with others, he had a private room. But it appeared that the "business" of buying and selling securities for the particular taxable year was confined to selling securities which he had held for six years. The Court said,

"In the first place, we are by no means satisfied, even if we were bound by his oral testimony, that it proved him to have been regularly carrying on a 'business' of any kind. A trader on an exchange, who makes a living in buying and selling securities or commodities, may be said to carry on a 'business'; a person who frequents brokers' offices, and continually dabbles in real estate is conceivably quite different. Most men who have capital change their investments, and may speculate all the time; we should hardly call this a business, though the line is undoubtedly hard to draw."

The Court did not go so far as to say that one, not a member of an exchange, could not carry on a business of dealing in securities. It was confronted with the difficulty in reconciling the oral testimony of the taxable tending to show that he was regularly carrying on the business of buying and selling securities in 1919 with his tax return which showed nothing but sales of securities held for six years. And, the Court said,

"In any business there will indeed be periods of inactivity, during which it would hardly be true to say that the business was not being 'regularly carried on.' Such in any case would be plainly true when one was speaking of an ordinary commercial or industrial enterprise. It seems to us, however, impossible to regard the business of buying and selling securities and real estate as having a similar continuity when for a whole year the person supposedly engaged in it does nothing at all or substantially nothing. Assuming that he is ever in a business, while so engaged, he will be in it and out of it as he trades or does not. Here again it is a question of degree, and the length of the intervals will determine the conclusion."

*Washburn v. Commissioner* (*C. C. A.*), 51 *F.* (2d) 949, 953, arose under *Section* 204, subdivisions (*a*) and (*b*) of the *Revenue Act of* 1921 (42 *Stat.* 231), permitting a net loss resulting from the operation of any trade or business

regularly carried on to be deducted from the net income of the next succeeding year. The taxable was a lawyer who had ceased to practice to devote his time to enterprises in which he was interested. To develop timber lands owned by corporations managed by him, he formed a corporation which built a railroad, to which corporation he advanced money taking stock in return. He claimed a loss from the sale of this stock as a business loss. The Board of Tax Appeals held that the loss did not result from the operation of a business but was an investment loss incident to an isolated transaction. The Circuit Court of Appeals, on appeal, reversed this ruling, saying that they were satisfied that the taxable was engaged in a business regularly carried on. The Court said, *inter alia,*

"Much is said in argument as to petitioner being engaged solely in holding the securities of the enterprises in which he was interested, and that he was a mere investor receiving the ordinary returns of ownership. A party may have investments in corporate stock, have no particular occupation, and live on the return of his investments. That would not constitute business under the statute in question. He may, however, take such an active part in the management of the enterprise in which he has investments as to amount to the carrying on of a business."

This last sentence was accepted by the Tax Board, in its opinion herein, as the test established by the Court to distinguish a mere investor from a person engaged in business. With deference to the Board, we think the Court meant to say nothing more than that actual management of an enterprise by one who owned stock therein might be one means of distinguishing an investor from a person engaged in business; for the Court proceeds to discuss a number of cases decided by the Board of Tax Appeals and, apparently with approval, quotes from the opinions in *Schwinn v. Commissioner,* 9 *B. T. A.* 1304; *Ostenberg v. Commissioner,* 17 *B. T. A.* 738, cited by the appellant, and cites *Crane v. Commissioner,* 17 *B. T. A.* 720; *Potter v. Commissioner,* 18 *B. T. A.* 549; *Averill v. Commissioner,* 20 *B. T. A.* 1196, in

support of its pronouncement that the opinion of the Board in the case before it had been overruled by its own later decisions. In the Averill Case the Board of Tax Appeals said,

"To come within the intendment of the statute it is not sufficient that the loss sustained be sustained in a business transaction. It must be sustained in a trade or business regularly carried on by the taxpayer. This Board has, therefore, distinguished between a business regularly carried on and a single, isolated transaction. * * * When an activity ceases to be isolated and assumes a continuity and importance that characterize it as an activity regularly engaged in, must necessarily depend on the facts of each particular case. Obviously in every case a business to be regularly carried on must be characterized by a continuing activity in some field of business endeavor. The loss contemplated by the statute is an operating loss, and the party claiming it must be the operator of the trade or business in which the loss occurs."

In *Mente v. Eisner* (*C. C. A.*), 266 *F.* 161, 162, 11 *A. L. R.* 496, Mente was engaged in the manufacture of bags and bagging. He had for three years or more been buying and selling cotton on the cotton exchange for his individual account. The report does not disclose the details or extent of the dealings. He deducted losses sustained in these operations as "losses incurred in trade." The Collector assessed an additional tax which was paid under protest, and Mente sued to recover the tax paid. On appeal to the Circuit Court, the ruling of the lower Court was upheld, the Court saying,

"We think that the language 'losses incurred in trade' is correctly construed by the Treasury Department as meaning in the actual business of the taxpayer, as distinguished from isolated transactions. * * * It must be determined from the facts in each case whether or not the losses claimed to be deducted have been incurred in a business."

*Rogers v. U. S.* (*Ct. Cl.*), 41 *F.* (2*d*) 865, presents nothing more than the instance of a physician investing the surplus of his earnings in various enterprises. The Court held that a trade or business regularly carried on meant a vocation and not occasional or isolated transactions.

*Phipps v. Commissioner* (*C. C. A.*), 54 *F.* (2*d*) 469, 471,

is not helpful. Selling lots of land in Florida which had been held for over seven years, with no purchases of land for those years, was held not to constitute a business, the Court saying,

"Persons with large incomes invest their surplus funds in something, and if, to diversify their holdings, they buy land, with the expectation of selling it when a good price is offered, such an expectation cannot, in our opinion, convert some sales of land that had been held for seven or eight years into a trade or business in real estate. There should be a greater continuity and larger absorption of time in such transactions to make the taxpayers more than investors."

*Schwinn v. Commissioner, supra,* and *Ostenberg v. Commissioner, supra,* offered by the appellant in support of his contention, are cited, as has been said, with apparent approval in the Washburn Case. In the first of these cases, Schwinn devoted two-thirds of his business time to studying the markets and to the purchase and sale of securities and commodities. He had no established office, conducting his affairs largely at his residence. Having lost in the sale of a security, he reported the loss as one sustained in his trade or business, and his claim was upheld, the Board saying,

"The chief occupation or business of one, so far as worldly pursuits are concerned, is that which is of principal concern to him, of some permanency in its nature, and on which he chiefly relies for his livelihood or as the means of acquiring wealth, great or small."

In the Ostenberg Case the taxable divided his time between different enterprises, such as, banks, laundries, farms, oil and mining in which he had investments. The Board held that he was regularly engaged in carrying on a trade or business within the meaning of *Section* 204 (*a*) of the *Revenue Act of* 1921 (42 *Stat.* 231).

In *Commissioner v. Widener* (*C. C. A.*), 33 *F.*(2*d*) 833, the operation of a racing stable was held to be a business,

and the losses sustained therein deductible under *Section* 214 (*a*) of the *Revenue Acts of* 1918 and 1921 (40 *Stat.* 1066, 42 *Stat.* 239).

In *Whipple v. Commissioner,* 263 *Mass.* 476, 161 *N. E.* 593, 595, the taxable was a lawyer. He operated a farm for raising pure bred guernseys, poultry and trout. He lost largely in his farm and sought to deduct his loss from his professional income. It appeared that he spent little of his time at the farm employing a superintendent under whom twenty or more employees worked. The farm has incurred losses for several years, and was maintained partly as a source of pleasure, or to demonstrate the practicability of scientific farming, but the operations were conducted in the hope of profit. The Court, in holding that the activities of the taxable constituted a business, defined business as an activity which occupies the time, attention and labor of men for the purpose of livelihood, profit or gain, and proceeded to say,

"If one of the purposes of the owner is to make the farm show a profit, considerations such as the hope entertained by him that he may be able to demonstrate to others the practicability of scientific farming or the fact that the profession of the law is his principal occupation do not take from the enterprise its character as a business."

From these authorities, it appears that the test to distinguish one engaged in business from a mere investor is the continuity of the activity as opposed to occasional or isolated transactions.

It is clear from the record that the taxable was doing more than changing the kind and character of his investments. Permanency of holding was not in his mind whereby to receive the ordinary returns of ownership. He was doing more than maintaining a marginal trading account such as scores of persons maintain. He was engaged in a serious and persistent effort to make gain by the purchase and sale

of securities from day to day, not to obtain income from dividends of securities purchased for investment, but from the rise and fall of the securities themselves. To this end he gave largely of his time and employed the bulk of his wealth. His was a continuing activity, or vocation, and hence, in law, a business. See *Snyder v. Commissioner*, 55 *S. Ct.* 737, 79 *L. Ed.* —. His losses were operating losses in his enterprise and, having sustained them therein, he was entitled to deduct them in computing his net income.

The appellee further contends that the authorities above cited are not conclusive as they arose under provisions of the Federal Income Tax Law designed to lessen the burden of taxation, whereas, it was the purpose of the Delaware Act to increase the revenues and, therefore, it was the legislative intention that the word "business" have a restricted meaning confined to those who deal with the public in the usual course of trade. The argument proceeds in this wise: By *Section* 4 of the original act (*Vol.* 32, *Laws of Del.*, at *page* 22) capital losses might be offset against income as well as capital gains; that this act did not produce the desired revenue, and in 1925, the section was rewritten (*Vol.* 34, *Laws of Del.*, at *page* 55), limiting the deduction of such losses, in all cases, absolutely to capital gains; that this restriction caused hardship in cases where capital losses were sustained in business, whereupon the section was enacted in its present form; from which it follows, as it is contended, that the word "business" was used in a restricted or popular sense. The difficulty with this argument is that Courts are not at liberty to indulge in mere speculation as to the intentions of the legislature where the language of the statute is plain and unambiguous, for, in such case, there is no room for interpretation. It is more readily to be supposed that the legislature used the word "business" as it has very generally been defined in taxing statutes. There is nothing in the wording of the Act to

indicate that the word was meant to have any narrow or restricted meaning. If the legislature had intended that only a trader on an exchange could deduct generally losses resulting from dealing in securities as those incurred in the operation of a business, it could have so provided. This contention would compel this Court, in reality, to insert in the section an exception where none exists, and, therefore, to legislate under the pretense of construction.

Except the Bedell Case, in which a doubt is implied, we have found no authority which holds that a person, not a member of an exchange, may not constitute the buying and selling of securities his business. There seems to us to be no essential difference between one, a member of an exchange, seeking profit by dealing in securities, and another, not an exchange member, who devotes a like amount of time, energy, thought and capital in the same activity and for the same end. In the one case the business is, perhaps, more susceptible of proof, or it may be said, the mind more readily accepts the existence of the fact; but, none the less, if, in the other case, the essential facts are proved, the result must be the same.

It by no means follows, as contended by the appellee, that the result will be a practical nullification of the Act. Very few people, wealthy though they be, will be able to show that they are doing more than supervising their investments by changing them from time to time, or maintaining the ordinary marginal account. The instances will be negligible of those employing almost their entire capital, giving the most of their time and attention in the endeavor to make money by the daily rise and fall of securities.

The ruling of the Tax Board is reversed and the matter is remanded to the Tax Commissioner for action in accordance herewith.