ALICE P. BACHOFEN VON ECHT, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 17588. Promulgated December 15, 1930.

*J. Bond Smith, Esq.*, and *Jesse Watson, Esq.*, for the petitioner. *Harold Allen, Esq.*, for the respondent.

OPINION.

MORRIS: The issue presented in this proceeding is the deductibility of $16,500 paid by petitioner to her attorney for services rendered. Since the petitioner is a nonresident alien, her taxable net income for 1921 must be computed in accordance with the provisions of

the Revenue Act of 1921 with respect to nonresident aliens. The pertinent portions of that act are as follows:

SEC. 213. * * *

(c) In the case of a nonresident alien individual, gross income means only the gross income from sources within the United States, determined under the provisions of section 217.

SEC. 214. (a) That in computing net income there shall be allowed as deductions:

(1) All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * *

\* \* \* \* \* \* \*

(6) Losses sustained during the taxable year of property not connected with the trade or business (but in the case of a nonresident alien individual only property within the United States) if arising from fires, storms, shipwreck, or other casualty, or from theft, and if not compensated for by insurance or otherwise. * * *

\* \* \* \* \* \* \*

(b) In the case of a nonresident alien individual, the deductions allowed in subdivision (a), except those allowed in paragraphs (5), (6), and (11), shall be allowed only if and to the extent that they are connected with income from sources within the United States; and the proper apportionment and allocation of the deductions with respect to sources of income within and without the United States shall be determined as provided in section 217 under rules and regulations prescribed by the Commissioner with the approval of the Secretary. * * *

SEC. 217. * * *

(b) From the items of gross income specified in subdivision (a) there shall be deducted the expenses, losses, and other deductions properly apportioned or allocated thereto and a ratable part of any expenses, losses, or other deductions which can not definitely be allocated to some item or class of gross income. The remainder, if any, shall be included in full as net income from sources within the United States.

Articles 271 and 324 of Regulations 62, interpreting section 214 (b) and 217 (b), are as follows:

ART. 271. *Deductions allowed nonresident alien individuals.*—In the case of a nonresident alien individual the deductions allowed by section 214 (a) for business expenses, interest, taxes, losses in trade, bad debts, depreciation, amortization, depletion, and involuntary conversion of property, are allowed only if and to the extent that they are connected with income from sources within the United States. See section 217 and article 329. As to deductions for losses not connected with the trade or business allowed by paragraphs (5) and (6) of section 214 (a) and contributions (par. 11), see article 324. * * *

ART. 324. *Deductions in general.*—The deductions provided for in section 214 shall be allowed to nonresident alien individuals * * * only if and to the extent that they are connected with income from sources within the United States. In the case of nonresident alien individuals, however, * * * (2) losses sustained during the taxable year of property not connected with the trade or business if arising from fires, storms, shipwreck, or other casualty, or from theft, and if not compensated for by insurance or otherwise are deductible only if the property was located within the United States; * * *

The petitioner contends that the law and the regulations when applied to the facts of record permit her to deduct the $16,500 as a business expense. If this contention be sound, the facts should show that petitioner paid or incurred this expenditure during the taxable year in carrying on a trade or business, and that it was an ordinary and necessary expense of that business. Respondent contends that the $16,500 item was a capital expenditure, but as an alternative contention urges that it was a purely personal expense.

The record contains the following facts relative to petitioner's business activities: Prior to her marriage petitioner served as secretary for her father, who had retired from business. After her marriage she lived in Austria with her husband, and from 1914 until some time in 1920 the record shows that she never communicated with her attorney in the United States. At some time prior to 1920 she became the owner or beneficially interested in an unknown amount of securities, composed principally of railroad bonds, and apparently coming to her from her father. Prior to seizure thereof by the Alien Property Custodian, her principal interest, so far as the record is concerned, with respect to these securities, was the receipt of income therefrom. The record contains no affirmative statements as to the management and control of these securities and the powers and duties of the trustees, or how and by whom the trusts were created. Counsel advises us on brief that the trust agreements existing at the time of the seizure by the Alien Property Custodian were abrogated by such seizure, and it appears from the record that Watson, as part consideration for his fee, was "to draw the necessary papers to permit her to continue her business in the United States after the interruption caused by the seizure by the Alien Property Custodian under the Trading With the Enemy Act." It appears that prior to her trip to California, petitioner advised Watson as to the purchase and sale of securities for her account and as to their final disposition, and that upon her return, before departing for Europe, she signed her income-tax returns for 1918, 1919, and 1920.

We are of the opinion that these activities of the petitioner constitute no more than the natural attention which one gives to the conservation and protection of his or her property rights. Prior to the advent of the war and the seizure of her property, the activity of the petitioner consisted principally in the receipt of income from her capital investments. After the recovery of her property from the Alien Property Custodian and the disposition thereof by Watson in accordance with her instructions, she apparently reverted to the condition which existed before the seizure, namely, receiving the income from her investments. It is no doubt true, as contended by petitioner, that she depended upon this income for her livelihood and profit, but she received it passively, paying little or no attention

to the possibilities of profit or losses which result from actively trading in stocks and bonds. The buying and selling, which occurred late in 1920 or in 1921, appear to have been more for the purpose of investing the cash which had accumulated during the time the property was in the hands of the Alien Property Custodian in income-producing securities than a dealing in securities for profits. There is certainly no evidence of record that petitioner periodically or even occasionally turned over her capital, nor does it appear that she ever maintained an office for business purposes.

Our attention has been directed to several cases of the Board and one by the Supreme Court which have allowed attorney fees to be deducted as business expenses, namely, *Kornhauser* v. *United States*, 276 U. S. 145; *F. Meyer & Brother Co.*, 4 B. T. A. 481; *J. W. Forgeus*, 6 B. T. A. 291; *Frederick McLean Bugher et al., Executors*, 9 B. T. A. 1155; *Thomas H. Franklin et al., Executors and Trustees*, 11 B. T. A. 148; *Udolpho Wolfe Co.*, 15 B. T. A. 485; *Florence Grandin*, 16 B. T. A. 515; *Muriel H. Wurts-Dundas et al.*, 17 B. T. A. 881; and *Chicago Title & Trust Co. et al.*, 18 B. T. A. 395. However, upon examining these cases we find the expenses were incurred as a result of the business conducted by the taxpayers or the deduction was allowed because of unusual circumstances peculiar to the individual case, as in the *Bugher* case. A number of the cases deal with attorney fees paid by trustees or executors in carrying out their fiduciary duties, and in these cases we have held that the attorney fees represent proper deductions for the *trust* or the *estate*. The distinguishing factor between this class of cases and the present case is that the trust or estate therein was considered to be in business within the meaning of the revenue acts under which those cases arose.

On the other hand, we have held that payment of attorney fees by an individual is not necessarily a deductible expense, *Estate of Helen S. Pennell*, 4 B. T. A. 1039; and we have refused to allow attorney fees as deductible expenses in the following cases: *Consolidated Mutual Oil Co.*, 2 B. T. A. 1067; *West End Consolidated Mining Co.*, 3 B. T. A. 128; *First National Bank of St. Louis*, 3 B. T. A. 807; *Emerson Electric Manufacturing Co.*, 3 B. T. A. 932; *Holeproof Hosiery Co.*, 11 B. T. A. 547; *North American Oil Consolidated*, 12 B. T. A. 68; and *Marion Stone Burt Lansill et al.*, 17 B. T. A. 413.

In most of the above listed cases the expenditure was for corporate organization or reorganization, or for defending title to property, but in the *Lansill* case, we specifically considered the question of whether petitioners were engaged in carrying on a trade or business within the meaning of section 214 (a) (1) of the Revenue Acts of 1918 and 1921. In that case the petitioners were, as heirs at law,

contesting and seeking to set aside a will, the provisions of which they objected to. They employed counsel for this purpose and sought to deduct on their returns attorney fees paid to said counsel. In the course of our opinion we stated, p. 425:

How can it be said that these petitioners were carrying on a trade or business? They were the passive recipients of royalties which inured to them by reason of their ancestor's will and the court's decree. They carried on no activity in which they were employed and there was nothing to "occupy their time, labor or attention for the purpose of livelihood or profit," as the term "business" has been sometimes broadly defined. Bouvier's Law Dictionary; *Flint* v. *Stone Tracy Co.*, 220 U. S. 107. See also *Charles L. Suhr*, 4 B. T. A. 1198; *Albert M. Briggs*, 7 B. T. A. 409; *Ignaz Schwinn*, 9 B. T. A. 1304; *B. H. Kizer*, 13 B. T. A. 395. It is not enough to say that by virtue of their contract with the attorneys this percentage was a "charge against the income when derived," because, while such charges may be treated as deductible expenses if incident to a trade or business, as in *La Monte* v. *Commissioner*, 32 Fed. (2d) 220, *American Cemetery Co.* v. *United States*, 28 Fed. (2d) 918, the statutory language expressly restricts the charge to that of trade or business. This also distinguishes *Kornhauser* v. *United States*, 276 U. S. 145, in which the attorneys' fees were incurred as an incident of litigation of an undisputed business.

We are therefore of opinion that the respondent correctly included the attorneys' fees in petitioners' gross income and made no deduction in respect thereof. * * *

The above language is applicable we think to the present facts. The petitioner herein was the passive recipient of interest from bonds and dividends from corporate stocks, and so long as the receipt of income continued uninterruptedly she had no occupation, trade or profession which occupied her time, labor or attention. Her activities in placing the securities under new deposit arrangements, whatever such arrangements may have been, did not constitute a trade or business within the meaning of section 214 (a) (1). Nor do we think the investment of the accumulated income, an isolated transaction occurring once over a period of many years, can be held to fulfill the requirements of the statute, that only ordinary and necessary expenses paid or incurred in carrying on a trade or business are deductible.

A portion of petitioners' brief was devoted to explaining away the statement appearing on petitioner's return relative to her occupation, profession or kind of business, and to the entry explaining the deduction of $16,500. Such statements, while evidentiary, are not conclusive, and can be rebutted by a proper showing of the true facts. We conclude, however, from all the evidence that petitioner has failed to prove this expenditure to be a deductible business expense.

Petitioner's alternative contention is that the $16,500 is deductible as a loss arising from fire, storm, shipwreck, or "other casualty"

basing her contention upon the term "or other casualty." We believe that the phraseology preceding the term "or other casualty" limits losses to those arising out of casualties similar to fires, storms, and shipwrecks. The definition of "casualty" found in Webster's New International Dictionary indicates that chance, accident or contingency is a requisite of casualty, whereas, here the seizure of petitioner's property was the result of design, intent and premeditation. No element of chance or accident was involved in the Trading with the Enemy Act. That act was a war measure, passed for the express purpose of preventing trading with the enemies of the United States, and the power to sequestrate enemy property under that act was specifically conferred on the Alien Property Custodian. It was in the exercise of that power that petitioner's property was seized and held. We believe that such seizure and holding is not within the intendment of "other casualty."

Reviewed by the Board.

*Decision will be entered for the respondent.*

---

TRUSSELL, dissenting: I think the item here in question is deductible as a business expense. The authorities cited in the opinion as sustaining the conclusion reached therein are, in my opinion, not in point. *Consolidated Mutual Oil Co.*, 2 B. T. A. 1067, and *West End Consolidated Mining Co.*, 3 B. T. A. 128, are both cases of expenditures by corporations in defense of title to property. Not only is the question in each case one clearly distinguishable from that in the case at bar, but the conclusion reached in each one of those cases, that such expenditures are not deductible business expenses, is in effect squarely overruled by the Supreme Court in *Kornhauser* v. *United States*, 276 U. S. 145.

*First National Bank of St. Louis*, 3 B. T. A. 807, *Emerson Electric Manufacturing Co.*, 3 B. T. A. 932, and *Holeproof Hosiery Co.*, 11 B. T. A. 547, are cases involving attorney fees paid for services in organization or reorganization of the taxpayer corporations. It is well settled that such expenditures are capital in character, and no such expenditure is involved in the case before us. *North American Oil Consolidated*, 12 B. T. A. 68, involves attorney fees paid to secure Government patents to certain lands upon which the taxpayer merely had claims, and these fees were clearly capital expenditures representing a cost of the title to the land, which the taxpayer up to that time had not possessed, and which he secured through the services for which the payment was made. *Marion Stone Burt Lansill et al.*, 17 B. T. A. 413, quoted from in the foregoing opinion and mainly relied upon, was a decision upon facts, which are, in my

opinion, clearly distinguishable from those here shown. In that case, as pointed out in the decision, the petitioners were "merely passive recipients" of income of a trust, the management and control of the property being in the trustees for their benefit. The litigation in which the attorney fees were paid was voluntarily brought by these beneficiaries not to gain a beneficial interest, for this they already had, but to merely gain the possession, control and management of the corpus of the trust, and these expenses were consequently held not necessary or incident to the business of managing and conserving the property, as that function was the business of the trustees, but to attain an object representing the personal desire of the beneficiaries in no sense necessary to their enjoyment of beneficial interest and income from the property.

In the case of *Marshall Field*, 15 B. T. A. 718, we held attorney fees paid by the beneficiary of a trust in litigation through which he secured possession and control of the trust property to be capital expenditures exhaustible over the term of the trust, and these expenses being paid ratably over such term, the effect of the decision was to allow the fee payments as deductions from income as paid to the same extent that they would have been allowed had they been held to be business expenses. On appeal the Circuit Court of Appeals for the Second Circuit in opinion of July 7, 1930 (42 Fed. (2d) 480), reversed the Board on this point, holding that the fees in question were not capital expenditures by which a wasting asset was acquired. This case is, in my opinion, not in point. A materially different situation is presented in the instant case. The *Field* case is one upon facts similar in many respects to those of the *Lansill* case heretofore discussed.

In the present case the petitioner had inherited from her father certain property. For many years she had lived in Europe and employed an attorney to look after her interest in this property, located in this country. She also employed a trust company as her agent to hold the securities, collect the income and make such investment of surplus income from time to time as she might direct. She must necessarily have paid for these services and it seems clear to me, beyond necessity for argument, that the fees paid by her to this attorney and this trust company for the services rendered would represent proper deductions from the gross income received from the property, and I can see no distinction whatsoever between such fees and the one here in question paid the attorney for services necessary to defend her right to possession and control of this property on sequestration of it by the Alien Property Custodian. The property was being held by him. She was denied not only possession and control but was denied the income. The employment of an attorney was assuredly reasonably necessary if she was to secure

possession and realize the accumulated income of $165,000. The opinion holds that she may not deduct from such income the expense incurred as one necessarily incident to its realization. It does not determine the character of this expenditure but merely holds it not to be a deductible business expense. However, such expenditure must be either a capital, personal or business expense, or a loss. The opinion holds that it is not a loss, and I can not see that it bears any resemblance to a capital expenditure, as petitioner had full title to the property, having taken it by inheritance, and obtained no capital interest in addition to what she already had through payment of the fee, but merely realized the accumulated income and *maintained* her right to continue to hold the property and enjoy the income in the future.

The item must necessarily, in my opinion, be either a personal or a business expense and the language of the foregoing opinion appears to class it as a personal expense. In *Kornhauser* v. *United States*, *supra*, the Supreme Court had a case of expense incurred in defending the title of capital assets accumulated by the taxpayer in the past through the operation of a business, and held such expenditures to be deductible business expenses.

If the foregoing opinion is to be construed as classing the fee here in question as a personal expense, it draws a distinction between identically similar expenses in respect to property accumulated in business and property inherited. Suppose, for illustration, that the property owned by this petitioner and sequestered by the Alien Property Custodian had been in part accumulated by her in a business operated years before and the balance inherited from her father. Under the *Kornhauser* case it can not be questioned that any expenditure for attorney fees in respect to the first item of property would be a deductible expense, and I can see no reason for drawing a distinction between the two. Is not the protection of inherited property as much a business as the protection of property accumulated originally in business? It seems to me that the fallacy of the foregoing opinion is the assumption that this taxpayer was merely, in so far as this property was concerned, a passive recipient of income, similar to the beneficiaries in the *Lansill* case. I can not agree with this. I do not think that one, living upon the income of property owned and controlled by him, although he may not be engaged in a vocation, is a passive recipient of the income from his property. We all know that, to enjoy the income from invested property, those investments must be watched and safeguarded and action taken from time to time to conserve the property, and I think that one who is so engaged or who employs agents for that purpose is carrying on business in the sense in which that term is used, and the expense incident to the conserving and safeguarding of

712

the invested property and collection of the income is a deductible business expense. I can see no reason for restricting the meaning of the word " business " as used in the section of the act here applicable to business constituting a vocation, and the foregoing opinion in effect so restricts it. This is not a question of an expense of a " business regularly carried on " as in the statutory provision for allowance of net losses and in which we have held that such business must amount to a vocation. Any one owning property which requires some degree of management and incurring a necessary expense to protect and conserve that property sustains, in my opinion, a business expense thereby, and in the present case it can not be doubted that this expense was necessary and the responsibility upon this taxpayer to carry the burden of the protection of her property, for no one else was charged with that responsibility. It was her property alone and under her control. There was no trustee responsible for its management and for the safeguarding of her interests. Her position was very different from that of a passive recipient of income.

LANSDON, PHILLIPS, ARUNDELL, VAN FOSSAN, and SEAWELL agree with this dissent.