AUSTIN D. BARNEY, H. BISSELL CAREY AND E. E. DIMON, EXECUTORS OF THE ESTATE OF D. NEWTON BARNEY, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 71720. Promulgated August 13, 1937.

*E. Barrett Prettyman, Esq.*, for the petitioner.

*L. H. Rushbrook, Esq.*, and *F. L. Van Haaften, Esq.*, for the respondent.

448

OPINION.

ARUNDELL: The principal question here is whether the petitioner was carrying on a business so as to come within section 23 (a) of the Revenue Act of 1928, which allows the deduction of ordinary and necessary expenses paid or incurred in carrying on any trade or business.

The decided cases touching upon what constitutes the carrying on of a business do not announce any comprehensive rule that can be readily applied to the varying facts that are presented in this class of cases. There are decisions both ways, with distinctions drawn that make them difficult to apply. The difficulty is recognized in *Bedell* v. *Commissioner*, 30 Fed. (2d) 622, where the taxpayer devoted a part of his time to buying and selling securities and real estate. The court said:

* * * A trader on an exchange, who makes a living in buying and selling securities or commodities, may be said to carry on a "business"; a person who frequents brokers' offices, and continually dabbles in real estate is conceivably quite different. Most men who have capital change their investments, and may speculate all the time; we should hardly call this a business, though the line is undoubtedly hard to draw.

In *Harvey H. Ostenberg et al., Administrators*, 17 B. T. A. 738, the taxpayer was a capitalist and an investor of money on a large scale. The facts stated in that case are:

* * * His investments covered a wide range of businesses, such as banks, laundries, farms, livestock, mining, oil, and water-softening devices, and included the stocks and bonds of many corporations. He did not devote all of his time to any one of the enterprises in which he invested, but divided his time among them in order to look after his interests, and all of his transactions were entered into for profit, and they constituted his business and the source of his income.

On those facts we concluded that the taxpayer was regularly engaged in carrying on a trade or business within the meaning of the net loss provisions of the taxing statute.

In *Foss* v. *Commissioner*, 75 Fed. (2d) 326, the taxpayer deducted as a business expense counsel fees incurred in litigation instituted by stockholders of a corporation in which he owned the majority of stock. The taxpayer's business activities are described by the court as follows:

During the period in question Foss was a man of many interests and activities. He was president of a manufacturing company, of a water company, and of a real estate company. He was director of many other companies, including banks, railroads, and a stockyard. From 1911 to 1913 he was Governor of Massachusetts. He maintained an office and a personal secretary, and he kept books of account. He was a man of considerable property, which was invested in various enterprises; and, after finishing his terms as Governor, he devoted his time to looking after his investments and to the operations of the various corporations in which he was an officer.

In holding that the activities of Foss amounted to the carrying on of a business the court said:

* * * A person of property, who devotes his time to the active management of it and also to active participation in the management of the companies in which his property is invested, and who maintains an office for that purpose where he spends a substantial part of his time, is carrying on business

within the meaning of this statute. If Foss had employed somebody else to look after his affairs, that person would certainly have been engaged in business; and we think that Foss, in attending to his affairs himself, was equally engaged in business. The line comes between those who take the position of passive investors, doing only what is necessary from an investment point of view, and those who associate themselves actively in the enterprises in which they are financially interested and devote a substantial part of their time to that work as a matter of business. The maintenance of an office for this purpose, though not conclusive, is significant. We are of opinion that Foss was carrying on business within the meaning of the statute.

In the case of *L. T. Alverson*, 35 B. T. A. 482, the taxpayer was a lawyer engaged in the practice of his profession. That was his principal business. He also bought and sold substantial quantities of securities on the New York Stock Exchange. In the taxable year he paid $600 for special statistical service, advice and information in handling his securities to the best advantage to gain profit and minimize his losses. In that year he had some seventy transactions on the stock exchange, involving more than $150,000 in sales. In allowing a deduction for the $600 as a business expense the Board said:

\* \* \* The word "necessary" as used in the statute means "appropriate" and "helpful." *Blackmer* v. *Commissioner*, 70 Fed. (2d) 255.

Situated as petitioner was with reference to his business affairs and his method of handling them, he deemed it appropriate and helpful to make the expenditure in order to realize maximum returns. Profits made on his investments in his dealings on the stock exchange are taxable, and losses minimized serve to increase his taxable net income from other sources. It is not material that petitioner had other or larger business interests in which he was engaged. The statute is not so restricted as to confine deductions to a single business or principal business of the taxpayer. A taxpayer may carry on more than one trade or business at the same time. "Any trade or business" is the broad language of the statute.

We, therefore, conclude that taxpayer, in dealing on the stock exchange to the extent he was during the taxable year, was carrying on a trade or business within the meaning of the statute, and that the amount expended for statistical services, information and advice was reasonable, in view of the volume of business transacted, and was an ordinary and necessary expense in connection with the business and the deduction should be allowed.

Considering the holdings above, particularly the *Foss* and *Alverson* cases, we are of the opinion that the petitioner was carrying on a business within the meaning of section 23 (a). He was not, in the language of the *Foss* case, a passive investor "doing only what is necessary from an investment point of view." Some idea of the extent of his activity is conveyed in the fact that he built a fortune estimated at $7,000,000 out of the sum of less than $100,000. In 1930 the value of stocks and bonds was nearly $5,000,000. He owned over 40 different stocks and more than 50 different issues of bonds. He was president and a director of one of the companies in which

he owned stock and was a director in 5 others. During the year he purchased over 20 lots of securities and sold or otherwise disposed of over 20 lots. The purchases made were in excess of $640,000; the securities sold had a book value of $297,000. Cf. *Alverson* case, *supra*. To carry on these activities the petitioner maintained an office, which, as said in the *Foss* case, while not controlling, is significant.

While no direct issue is raised as to the reasonableness of the salary paid Dimon, there is evidence to establish that it was a reasonable amount. It was testified that the fees of the bank that had formerly handled petitioner's securities would have amounted to more than the amount of Dimon's salary.

We accordingly hold that the petitioner was carrying on a business and that the amount paid to Dimon was reasonable compensation, which under the statute is allowable as an expense deduction.

Our conclusion on the main issue makes necessary a consideration of the alternative question raised by the respondent; that is, whether the petitioner is entitled to the benefits of the capital gain provisions with respect to the amount he reported as capital gain. Section 101 (c) (8) of the Revenue Act of 1928 excludes from the category of capital assets "property of a kind which would be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale in the course of his trade or business." The first part of the quotation excludes dealers who may use inventories in the determination of their income. It has not been established here, and it can not be gathered from the evidence, that petitioner was a dealer. His "dealings", that is, his purchases and sales, were only one phase of his business. Nor has it been established that his securities were held "primarily for sale in the course of his trade or business." At least some of them may have been held to permit his retention of office or directorships in the corporations. His largest stockholding was in the family holding corporation. This stock undoubtedly was not held primarily for sale. His business was primarily that of managing his investments. His purchases and sales, while substantial in number and amount, were incidental to his main business. There is nothing in the record to indicate that he held himself out. as a dealer in securities. Cf. *Francis M. Weld*, 31 B. T. A. 600. We hold that the respondent has not established that the petitioner incorrectly reported a capital gain.

*Decision will be entered under Rule 50.*