## MILLER v. COMMISSIONER OF INTERNAL REVENUE.*
### No. 8949.

Circuit Court of Appeals, Ninth Circuit.
March 15, 1939.

Fabius T. Finch and Stanislaus A. Riley, both of San Francisco, Cal., for petitioner.

James W. Morris, Asst. Atty. Gen., and Sewall Key, John A. Gage, and Edward F. McMahon, Sp. Assts. to Atty. Gen., for respondent.

Before GARRECHT, HANEY, and STEPHENS, Circuit Judges.

STEPHENS, Circuit Judge.

This is a petition to review a decision of the Board of Tax Appeals which sustained a determination of the Commissioner that there is a deficiency in income tax of Jonas Bloom for the calendar year 1933 in the amount of $3,170.36.

█ Before proceeding to consider the merits of this case it is necessary for us to first dispose of a motion made by respondent to dismiss the cause. The ground for the motion is that the petition has been filed by and in the name of a person who has never been made a party of record to the proceedings before the Board. It appears that the proceedings before the Board were instituted by Jonas Bloom to

*Rehearing denied April 20, 1939.

have reviewed the Commissioner's determination; that the Board entered its decision on February 24, 1938; that thereafter, on May 6, 1938, Jonas Bloom died; that on May 16, 1938, the Superior Court of the State of California (deceased was domiciled in California at the time of his death) made an order appointing Frank Miller special administrator of the estate of Jonas Bloom, "with the power especially to file [the petition for review now before us] and to prosecute the hearing thereof to final judgment"; that on May 16, 1938, Frank Miller qualified as such administrator and that he ever since has been and now is the duly appointed, qualified and acting special administrator of the estate of decedent; that the petition for review now before us was filed by "Frank Miller, as Special Administrator of the Estate of Jonas Bloom, Deceased" on May 20, 1938, or within three months of the decision of the Board; that there has at no time been filed any other petition for review of the Board's decision; that the record does not disclose that the special administrator was ever made a party to the proceedings before the Board; that the time for filing a petition for review expired on May 24, 1938.

The Commissioner argues that a petition for review may be brought only by one who is a party to the record and that since no petition was filed by such a party within the three months period prescribed by the appropriate statute [Section 1001(a) of the Revenue Act of 1926, as amended by section 1101 of the Revenue Act of 1932, 26 U.S.C.A. § 642], this court has not acquired jurisdiction of the cause and that consequently it must be dismissed. In response to this argument petitioner asserts that in view of the limited time available between the death of Jonas Bloom and the expiration of the time for filing the petition he took the only course possible by filing the petition and therein setting out the fact of his right to proceed, and that since he is in fact the duly authorized representative of the deceased it is immaterial that he has not been substituted as a party of record before the Board, particularly since (as is uncontradicted) the Commissioner has not been misled or prejudiced by the lack of substitution. Finally, petitioner takes the position that if we be of the opinion that substitution be necessary, that we should now make our order substituting him as petitioner on review.

We think the motion to dismiss must be denied and the motion for substitution granted. While we have been unable to discover authority directly bearing on the point now before us, we see no reason for deciding that we have acquired no jurisdiction of this case where, after decision and before expiration of the period allowed for petitioning us for review, the duly authorized representative of the deceased has filed a petition wherein is set out the facts upon which his right to proceed is based, which facts would have required the Board to order substitution had a request therefor been made to it. It is not asserted that harm has or will be done to the Commissioner because of the non-substitution before the Board, nor can we perceive how harm could be done thereby. Under the circumstances orderliness of procedure seems served as well by substitution made in this Court as if made by the Board.

Though our Rules [1] do not cover situations like that now presented, we believe that we have authority to provide for such, as well where they arise on petitions to review decisions of the Board of Tax Appeals as in other cases, for we are authorized by statute to adopt rules "for the filing of the petition for review, the preparation of the record for review, and the conduct of proceedings upon such review". Section 1003(b) of the Revenue Act of 1926, as amended, 26 U.S.C.A. § 641. This general authority would seem to include power in us to allow for filing of a petition for review by the duly authorized representative of a party who dies after the Board's decision. Having such power, and there being nothing inherently improper in

---

[1] Rule 30 of our new rules (effective December 19, 1938) governs the filing of the petition for review of a Board of Tax Appeals decision, the preparation of the record, and the conduct of proceedings for review. Said rule makes applicable to such petitions for review all other rules of this Court not inconsistent with Rule 30. Rule 15, entitled "Death of a Party", provides in sections 1 and 2 for the procedure to be followed upon the death of a party when "an appeal [is] pending in this court." Section 3 of the same Rule covers the situation where a nonappealing party is dead when an appeal is sought to be prosecuted. Rules 36 and 19 of the rules applicable prior to December 19, 1938, were, so far as significant here, substantially the same as the present Rules 30 and 15.

the manner in which it has been invoked by petitioner, we think we have acquired jurisdiction of the case.

The decisions cited in support of the motion to dismiss are not inconsistent with our decision that we have jurisdiction of this case. Payne v. Niles, 20 How. 219, 15 L.Ed. 895, involves no problem of substitution, but holds only that one not a party to an action can neither appeal nor be made a party defendant to an appeal. Ex parte Cockcroft, 104 U.S. 578, 26 L.Ed. 856 is to the same effect. In Taylor v. Savage, 1 How. 282, 11 L.Ed. 132, appeals were taken by and against an executor against whom judgment had been rendered in his representative capacity. He had at the time of the taking of the appeals been removed from his office. The court held that since he had no right to represent the deceased the appeals must be dismissed. The successor administrator who had petitioned to appeal, but who had filed no transcript nor executed an appeal bond, was refused his appeal until he had been made a party in the District Court, it being said that his appeal was "irregular". Dolan v. Jennings, 139 U.S. 385, 11 S.Ct. 584, 35 L.Ed. 217, was a case where one of two named parties appellant had died and the other brought the appeal as "survivor" of the two. It not appearing that the survivor had any right to take an appeal for the deceased, the appeal was dismissed because of a defect of parties.

More nearly in point is Davis v. Preston, 280 U.S. 406, 50 S.Ct. 171, 74 L.Ed. 514, where one against whom a judgment had been rendered in his capacity of Federal Agent sought to appeal the judgment after he ceased to be such. The court held his petition must be dismissed since he had no right to invoke a review. The Court at the same time denied a motion for substitution made by his successor because, "the time within which such a review may be invoked is limited by statute, and that time has long since expired. To grant the motion in these circumstances would be to put aside the statutory limitation and to subject the party prevailing in the state court to uncertainty and vexation which the limitation is intended to prevent". (Page 408, 50 S.Ct. page 172.) But cf., Bowden v. Johnson, 107 U.S. 251, 2 S.Ct. 246, 256, 257, 27 L.Ed. 386.

We think the distinction between the Davis case and the present case is plain— here our power has been invoked within time by one authorized to appeal, and no "uncertainty or vexation" results from our allowing the substitution. See, Gates v. Goodloe, 101 U.S. 612, 25 L.Ed. 895.

Coming, then, to the merits of the case, it appears that the question involved is whether the taxpayer's activities in 1933 amounted to a trade or business within the meaning of Section 23(a) of the Revenue Act of 1932, 26 U.S.C.A. § 23(a), so as to allow for the deduction from taxpayer's gross income of certain expenses incurred in connection with said activities.

On December 18, 1930, Mr. Jonas Bloom, an individual residing in San Francisco, California, created a revocable trust, to terminate at his death, designating the Wells-Fargo Bank and Trust Company trustee, and himself the sole beneficiary, and reserving the right to direct all investments and reinvestments of the corpus. In 1930 and 1931 the taxpayer conveyed notes and securities to the trust in the full amount of about $1,500,000. These securities and notes consisted of a note to him for $500,000 from Bloom Brothers, a co-partnership; state and municipal bonds; bank stocks and promissory notes of individuals in the total amount of about $86,250. The trustee received and held in its custody the securities and notes consisting of the corpus of the trust which constituted almost all of Mr. Bloom's capital.

During the taxable year 1933, Mr. Bloom, who was a very old gentleman, being at that time about ninety years of age, engaged in no occupation other than supervising the investments that constituted the corpus of the trust. He maintained an office in an office building in San Francisco and came to it for a few hours almost every day, taking automobile drives in the afternoon with a chauffeur. Mr. Bloom employed two men in the office, a Mr. Wilson and a Mr. Miller, to do clerical work, to keep his personal books, make up his income tax returns, read trade journals and financial services and corporation statements. They made reports to the taxpayer of their study of investments and he took their advice into consideration in purchasing or selling securities. In the beginning of the year 1933, Mr. Bloom's investments consisted largely of bonds, but in that year he began selling bonds and purchasing stocks.

The taxpayer reported in his income tax return for the taxable year gross income of $47,966.72, of which $44,876.63 was in-

come from securities held for taxpayer in the mentioned trust. In connection with his office, taxpayer paid in 1933 for rent and services, $10,051.20, as follows:

| | |
|---|---|
| Office Rent | $ 2,445.00 |
| Telephone | 129.56 |
| Salaries | 5,500.00 |
| Investment Service | 1,976.64 |
| | $10,051.20 |

The taxpayer claimed as an allowable deduction in his income tax return the amount of $11,580.25. Of this, the amount of $1,798.07, fees paid to trustees for services to taxpayer, was allowed as a proper deduction by respondent. The balance of the amount claimed in deductions was claimed as business expense, and disallowed by respondent.

Section 23 provides, so far as here pertinent, that:

"In computing net income there shall be allowed as deductions:

"(a) Expenses. All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; * * * and rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity".

There being no question but that the expenditures sought to be deducted were actually made, the problem is narrowed to the determination of whether the enterprise in question constituted a "trade or business" within the meaning of the quoted section.

The Supreme Court has defined "business" in passing on a case under the corporation excise law, as being a very comprehensive term, embracing everything about which a person can be employed and as that which occupies the time, attention and labor of men for the purpose of a livelihood or profit. Flint v. Stone Tracy Co., 220 U.S. 107, 171, 31 S.Ct. 342, 55 L. Ed. 389, Ann.Cas.1912B, 1312.

The courts have held that where a man takes an active part in the management of an enterprise in which he has investments his activities amount to the carrying on of a trade or business, but they have drawn the line between such cases and those where the activities of the party are merely looking after investments and doing only what is necessary from an investment point of view. Bedell v. Commissioner, 2 Cir., 1929, 30 F.2d 622; Washburn v. Commissioner, 8 Cir., 1931, 51 F.2d 949; Foss v. Commissioner, 1 Cir., 1935, 75 F.2d 326. In the Foss case it was said: "The line comes between those who take the position of passive investors, doing only what is necessary from an investment point of view, and those who associate themselves actively in the enterprises in which they are financially interested and devote a substantial part of their time to that work as a matter of business". (Page 328.) There is no contention here that the taxpayer took any part in the enterprises in which he was an investor.

Other cases have recognized that though the taxpayer takes no part in the enterprises as to which he is an investor, he may nonetheless be considered to be carrying on a business if the transactions concerning his investments are substantial and frequent as distinguished from occasional or isolated. Dalton v. Bowers, 287 U.S. 404, 53 S.Ct. 205, 77 L.Ed. 389; Burnet v. Clark, 287 U.S. 410, 53 S.Ct. 207, 77 L.Ed. 397; Rogers v. U. S., Ct.Cl., 1930, 41 F.2d 865; Walker v. Commissioner, 3 Cir., 1933, 63 F.2d 351, affirming 20 B.T.A. 937; Stephenson v. Commissioner, 6 Cir., 101 F.2d 33, January 11, 1939; Schwinn v. Commissioner, 9 B.T.A. 1304; Kissel v. Commissioner, 15 B.T.A. 1270; Bachofen von Echt v. Commissioner, 21 B.T.A. 702; Alverson v. Commissioner, 35 B.T.A. 482; Barney v. Commissioner, 36 B.T.A. 446. In addition to the cases cited, two Circuit Court cases have very recently been decided which applied, in ascertaining the character of the taxpayer's investment activities, the test of the extent of those activities. We think that these two cases, taken together, establish a proper measure for the determination of whether a taxpayer's activities are of a "business" character.

In one of these cases, Kales v. Commissioner, 6 Cir., 101 F.2d 35, 39, January 12, 1939, the court held that the taxpayer's activities brought her deductions within the permissible scope of the statute. In that case it was sought to deduct the fees and expenses paid out by taxpayer in a suit for refund of Federal income taxes. It appeared that the taxpayer was a woman of considerable means inherited from her

father. On distribution of his estate she received in addition to some bonds, stock in 46 corporations and 9 parcels of real estate. Part of the stock received was that of the Ford Motor Company, and the litigation out of which the expenses in question arose involved the determination of the year in which a $505,978.88 dividend thereon was taxable. Taxpayer had previously been involved in extended litigation concerning the amount of tax payable by her on account of the profit realized by the sale of her Ford Motor Company stock for approximately $7,000,000. Taxpayer had an arrangement with her lawyers by which her books were kept by the firm's head bookkeeper, first with one assistant and later with two. For this service she paid the firm $3,000 a year. She visited the office set aside for her to confer with the bookkeeper three or four times a week, signed all checks personally except when absent from the city, and made all decisions affecting either her sale or purchase of securities. During the period 1916 to 1930 she purchased bonds in the aggregate amount of $11,665,073.97. During the same period bonds that were sold by her or which matured aggregated over $3,000,-000. Her stock purchases during the period were approximately half a million dollars, while those sold, including the Ford shares, aggregated nearly nine and a half million dollars. During the greater portion of the period she was engaged in the shifting of her investments from stocks to bonds. She made many very important decisions, all on her own responsibility. The Court, after reciting the foregoing activities and indicating that she engaged in others not detailed, said that her activities "were extensive, varied, continuous and regular", and on this basis concluded that they constituted a business.

In the second case mentioned, Kane v. Commissioner, 2 Cir.1938, 100 F.2d 382, the court concluded that the expenses deducted were not incurred in carrying on a "trade or business". In that case the deduction embraced the sum of $583.13 paid a trust company for commissions charged by it in collecting her income during that year, and $1,200 charged for office rent and services of a Miss Quinn who acted as her bookkeeper. Taxpayer, who was without business experience and who had inherited a substantial estate from her deceased husband, consulted her brother in connection with the handling of it. He testified that he "changed investments continually, substituting and changing, and reinvesting the income". The brother made no charge for his services, but charged the taxpayer a portion of the expenses incurred by him in the conduct of his office by way of office rent and the services of a bookkeeper who kept the books, checked income, and advised him as to the status of the securities. It also appeared that he and the taxpayer made arrangements with a trust company to act as custodian and to collect the income from various securities, for which service they paid a percentage upon the income collected.

The Court in concluding that the taxpayer was not engaged directly or indirectly in carrying on a business, said: "* * * * Mr. Weiller testified that he 'changed investments continually, substituting and changing, and reinvesting the income,' but it is not apparent from the statement to what extent there was activity in buying or selling securities or how far the taxpayer was other than a passive recipient of income or a mere investor either in her own capacity or through her agent. We think it would not be enough to secure or to attempt to secure income or capital stability by conversions of bonds into stock or vice versa, or by otherwise safeguarding the taxpayer's investments". (Page 383.)

We think the present case is unlike the Kales case, supra, and in no substantial manner to be distinguished from the Kane case, supra. In this case, as was true in the Kane case, there is no evidence relating to either the number or the extent of the taxpayer's dealings, while in the Kales case the evidence showed the dealings to be "extensive, varied, continuous and regular". The only evidence before us as to the extent of the taxpayer's activities in investing and reinvesting his funds is the testimony that his "investments consisted largely of bonds in the beginning of 1933, but in 1933 Mr. Bloom began selling bonds and purchasing stocks" and that "From time to time he sold some of these bonds and bought others".

The Commissioner determined that Jonas Bloom was not engaged in a "trade or business" in the taxable year 1933. The Commissioner's "ruling has the support of a presumption of correctness, and the petitioner has the burden of proving it to be wrong". Welch v. Helvering, 290 U.S. 111, 115, 54 S.Ct. 8, 9, 78 L.Ed. 212; and see Burnet v. Houston, 283 U.S. 223, 227, 51

S.Ct. 413, 75 L.Ed. 991; Buck v. Commissioner, 9 Cir., 1936, 83 F.2d 786, 788; Tiscornia v. Commissioner, 9 Cir., 1938, 95 F. 2d 678, 683. In the opinion of the Board of Tax Appeals the taxpayer did not meet the burden thus imposed upon him, and there being substantial evidence to support such opinion, the decision of the Board must be affirmed.

Affirmed.