**BEALS et al. v. UNITED STATES.**

No. 5427.

United States District Court
W. D. Missouri, W. D.

July 11, 1950.

Charles E. Whittaker, Watson, Ess, Whittaker, Marshall & Enggas, Kansas City, Mo., for plaintiff.

Sam M. Wear, U. S. Atty., Harry F. Murphy, Asst. U. S. Atty., Kansas City, Mo., for defendant.

REEVES, Chief Judge.

This is an action to recover income taxes paid by the plaintiffs on a deficiency determination for the year 1945. The only question for decision is whether the tax was one involving a loss on capital assets or a loss incurred by the taxpayers on property held by the taxpayers primarily for sale to cus-

tomers in the ordinary course of trade or business. An actual loss for the said year 1945 in the sum of $44,674.42 is admitted. It is the contention of the government that such loss was on capital assets and that a deduction of $1,000 only was proper and lawful, and that the claimed deduction in the net amount of $44,674.42 on owners' return for the year 1945 was properly disallowed.

On the other hand, the plaintiffs say that the entire amount was a deductible loss, perforce the provisions of Section 22(a), Title 26 U.S.C.A., and the exception provided in Section 117(a) (1), of said Title 26 U.S. C.A. If, therefore, the loss was sustained by the plaintiffs on "property held by the taxpayer * * * primarily for sale to customers in the ordinary course of his trade or business," then the plaintiffs are entitled to a refund of the extra amount paid, or recovery as claimed.

Adverting to the facts: Ward Investment Company, a corporation, doing business in Kansas City, Missouri, acquired a considerable extent of real estate in Kansas City many years ago. Such real estate was subdivided and improved for residential purposes. For many years said company was engaged in improving, trading and selling its lots. Co-plaintiff Helen Ward Beals, with her brother and others, acquired all the stock of Ward Investment Company by inheritance or by bequest and continued to operate said investment company.

Helen Ward Beals became president, and for many years devoted practically all of her time to the management of the properties owned by said Ward Investment Company, which involved renting, improving, and selling, as well as exchanging or trading properties of the corporation. The company sustained heavy losses during the latter years of its operations an on December 31, 1940, the assets of the corporation were distributed in kind to the holders of its capital stock in proportion to such holdings. Such assets consist of lots improved and unimproved, and mortgages. Plaintiff Helen Ward Beals, with her brother, received one-half of all assets of Ward Investment Company and from that time forward,

Helen Ward Beals, for herself, and as agent and attorney-in-fact for her brother, became the sole manager of the properties thus distributed to herself and brother. Previously, as president of Ward Investment Company, she had collected rentals, sold property, and also had employed an agent and had maintained an office separate and apart from her own home. After the distribution of assets on December 31, 1940, as above mentioned, she continued her activities in managing and disposing of one-half of the assets distributed by Ward Investment Company precisely as she had handled the affairs of Ward Investment Company as an executive officer. The only difference was that she provided office facilities in her home, but she employed a sales agent, attended to the collection of rentals, and interest on mortgages, and the maintenance of "For-Sale Signs" on all of the properties exactly as she had done as president of Ward Investment Company. She was thus continuously actively engaged in her efforts to dispose of the properties owned by herself and brother until finally the entire holdings had been sold. There were 77 lots in all. The evidence did not disclose successful sales during the first year or two of the operations, but sales were made in 1943 and 1944, and the balance of the properties were sold in 1945, from which the loss above mentioned is claimed and admitted to have accrued.

It is the contention of counsel for the government that it was a mere liquidation of a capital asset, and it did not have such an indicia of property being held for sale for customers as to entitle plaintiffs to take credit for the loss admittedly sustained.

1. The evidence was overwhelming that the plaintiff, Helen Ward Beals, devoted practically all of her time and attention to the management and sale of the property after the distribution of the assets of Ward Investment Company on December 31, 1940, and that her efforts continued until the final disposition and sale of all of said assets. It is the government's contention that the sales were sporadic and therefore not entitled to the status asserted by plaintiffs. It should be kept in mind that co-

plaintiff, Helen Ward Beals, devoted practically all of her time to the business, although apparently not very successful during the first year or two. This would not debar the right of recovery. Conditions were not favorable but her efforts were put forth just the same.

In Miller v. Commissioner of Internal Revenue, 102 F.2d 476, loc. cit. 479, the Court of Appeals for the 9th Circuit, differentiated the cases where the taxpayer was not entitled to claim loss in business in cases of sporadic sales. The court used the following language: "Other cases have recognized that though the taxpayer takes no part in the enterprises as to which he is an investor, he may nonetheless be considered to be carrying on a business if the transactions concerning his investments are substantial and frequent as distinguished from occasional or isolated."

The distinction sought to be made by counsel would not apply in this case for the reason that the co-plaintiff, as stated, devoted practically all of her time personally to carrying on the business. She did not rely upon others although she had an agent to aid her in accelerating the sale of the properties.

2. Brown v. Commissioner of Internal Revenue, 5 Cir., 143 F.2d 468, is an analogous case except that in the latter case the taxpayer had greatly profited and the government treated it as an ordinary income rather than as capital gains for the reason that it meant more revenue to the government. It is not logical, therefore, in this case for the government to take the opposite position for the reason that it would receive more revenue if able to treat the loss as one on capital assets.

The case of Dunlap v. Oldham Lumber Co., 5 Cir., 178 F.2d 781, can be easily distinguished. Clearly, in that case, the taxpayer was engaged in the lumber business, and not in the sale of lots. Its real estate holdings clearly constituted a capital asset not in the purview of said section 117(a)(1). And the court properly treated the transaction as one involving a capital asset.

In the case of McFaddin v. Commissioner of Internal Revenue, 148 F.2d 570, the Court of Appeals, 5th Circuit, loc. cit. 571, succinctly and clearly announced the true rule: "The issue of whether the profits from Central Gardens are returnable as ordinary income or as capital gains may be shortly disposed of by saying that the decisions have settled it *that property, subdivided and sold as Central Gardens was here, is regarded as sold in the business of the taxpayer and the profits from such operations are regarded as ordinary income.*" (Emphasis mine.)

Conversely, losses, if sustained, should be regarded as loss in the ordinary course of trade.

In like manner, Fahs v. Crawford, 5 Cir., 161 F.2d 315, may be easily distinguished. As stated by the court, 161 F.2d at page 317: "Here, the taxpayer did not develop wild lands into an improved subdivision and sell it off at retail, as in many of the cited cases. He bought an entire existing subdivision as an investment, and after holding it for 15 years added further improvements necessary to qualify it for FHA loans. The selling activities were carried on wholly by the broker, Commander,—not as a representative of the taxpayer, but in the exercise of his rights under the single contract he had with the owners to buy at a 10% discount, or to sell to others for a 10% commission. These selling activities were carried on by Commander as a part of his own real estate business, for his own account and at his own expense, the taxpayer having no part therein."

How different are the facts in this case! The authorities, both for plaintiff and defendant, have been carefully examined and analyzed. The above cases were cited by the defendant. Quite clearly, upon the undisputed facts, the plaintiffs are entitled to recover, and judgment will be rendered as prayed. Counsel for the plaintiffs will prepare an appropriate journal entry and submit same to counsel for defendant for approval as to form.

Findings of Facts and Statement of Conclusions of Law as proposed by plaintiff are given, as well as several proposed by counsel for defendant. All have been marked "given" or "refused," and filed.